(Decided May 25th, 1898).

---

· THE JACOB TOME INSTITUTE OF PORT DEPOSIT, CECIL COUNTY, *vs.* CHAS. C. CROTHERS AND WM. T. WARBURTON, ADMINISTRATORS OF J. A. DAVIS.*

*Trespass q. c. f.—Water and Water Courses—Title to Land Made by Additions to Riparian Lots—Water Privilege—Legislative Grant of Right to Make Extensions Into Navigable River—Construction of Deeds—Locations—Adverse Possession—Measure of Damages—Instructions to the Jury.*

One side of a lot of ground was described in the conveyance as binding on a street which was to be constructed in the water at the edge of a public navigable river. The Legislature afterwards authorized the owners of lots binding on the river to extend and improve the front of their lots for such distance into the river as they might choose. *Held*, that the Act of Assembly conferred upon the riparian owners new rights of property, and that the extensions made by them out into the river in front of their lots and beyond the projected street became statutory additions to the original lots and were held by the same title, and that if the location of the street had cut off riparian rights they became vested in the State and were by the Act of Assembly given to the lot holders.

The owner of a tract of land lying on the east side of a public navigable river laid it off into lots according to a certain plat which was recorded among the Land Records. The owners of these riparian lots were afterwards authorized by the Legislature to make exten-

---

* This case is reported out of its regular order so that it may be considered in connection with the next succeeding case of *Tome Institute* v *Davis*, relating to the same subject.

sions and improvements into the river.   The lots were shown on the plat as bounded by the edge of the river and a projected street under the water called Water street.   In 1824 two of these lots were described in an assignment of them as fronting on Water street and by reference to the plat.   The controversy in this case related to the ownership of certain additions to one of these lots, known as Lot 31.   In 1837, when this lot had been extended by wharfing, filling in, etc., about 59½ feet into the river beyond the point which was high-water mark when the plat was made, the then owner, one Nowland, conveyed to White, "the water privilege" of Lot 31, described as beginning at the top of high-water mark and running thence into the river.   In 1839 Nowland conveyed to Anderson the original Lot 31 and the additions thereto running to the water's edge, which was 59½ feet beyond the line of the lot as marked on the original plat.   Thus the Anderson lot and White's water privilege met at high-water mark.   White made an extension into the water by cribbing, wharf, etc., which extended 60 feet further into the river.   In 1855 White conveyed to Rinehart the water privilege of Lot 31, described as beginning at the corner of Lot 31 and running thence 60 feet towards the river.   And in 1866 White conveyed to Davis the water privilege of Lot 31, commencing at the top of high-water mark and running thence into the river.   The defendant claimed title under the deeds from Nowland to Anderson and from White to Rinehart, while the plaintiffs claimed under the deed from White to Davis.   *Held,*

1st.   That the deed of 1837 from Nowland to White did not convey any of the fast land which had then been made, but authorized the grantee to make extensions and improvements into the river and hold as his own the fast land so made.

2nd.   That the deed of 1855 from White to Rinehart conveyed the land beginning at the point which was high-water mark in 1837 and not at the point of high-water mark when the original plat was made, and embraced the fast land made at its date beyond the extension made prior to 1837, and that the question as to the location of high-water mark at that time was for the jury.

3rd.   That the deed of 1866 from White to Davis conveyed no land above high-water mark as it then existed, and that if the tract which White had conveyed to Rinehart in 1855 comprehended all the fast land which the grantor then had, the deed to Davis conveyed nothing, and that this was a question of fact for the jury arising on the locations.

In an action of trespass *q. c. f.* where there is no evidence of special damage and no circumstance of aggravation, the plaintiff is only entitled to recover the fair rental value of his land occupied by the defendant.

When a party claims title to land by adverse possession, evidence is admissible to show that the use of the land by other persons had been had with the consent of that party and therefore did not interrupt his adverse holding.

Appeal from a judgment of the Circuit Court for Cecil County (RUSSUM, C. J.), in an action of trespass *q. c. f.* The following diagram (from appellant's brief) illustrates the situation of the lots in question :

The lot designated by the figures 42, 8, 32, 5 represents the original Lot 31, leased by Sarah M. Thomas to Catharine and Elizabeth White.    8, 3, 4, 32 represents the first extension, called the additional water lot in the deed from Isaac Nowland to Allan Anderson and described as running to high water of the river.    This lot, as appears from the deed, was 59½ feet long by 40 feet in width.    3, 4, 36, 35 represents the lot conveyed by David White to Edwin J. Rinehart in 1855, which he filled in and upon which he built a stable, according to the defendant's contention.

Next, slightly over-lapping the last mentioned lot, is the right of way of the Columbia and Port Deposit Railroad.

The lines of the diagram 5, 4, 3, 8, 2, 1, 7, 6 represent the lines of the deed from Isaac Nowland to Allan Anderson, according to the defendant's contention.

The defendant's building occupies nearly all of the lots shown on the diagram, viz., the lot conveyed by Nowland to Anderson indicated by the figures 8, 3, 4, 32, and the lot claimed by the defendant to have been conveyed by White to Rinehart and designated by the figures 3, 4, 36, 35.

The locations of the original lines of Lot 31 and of the additional water lot running from the original lot below the street to the river made by the plaintiffs substantially agreed with the locations made by the defendant, but the plaintiffs' location of the deed from White to Rinehart in 1855 differed radically from that made by the defendant.    They located that deed by commencing at the southwesternmost corner of the original Lot 31 at the point indicated by 8 on the above diagram, but indicated by red 17 on the plats, and running thence for a width of 40 feet, 60 feet towards the river, bringing the lower line of their location but six inches from where the defendant made the beginning of its location, thus leaving the defendant without any paper title to all that part of Lot 31 below the line 3, 4, and between it and the river.

The plaintiffs then made two locations of the deed from David White to Jas. A. Davis, dated in 1864, under which they claim title :

1st. They located as within the description contained in that deed all the land between the lower or river side of the original Lots 30 and 31 and the river, thus including the Anderson lot below the street, as well as the land mentioned and described in the deed from White to Rinehart.

2d. They located all the land between the lower or river side of the original Lots 30 and 31 and the river, except the lot 40x60 feet described in the deed from White to Rinehart, located as above shown by beginning at the southwesternmost corner of the original Lot 31. This location is shown on the above diagram as within the lines marked 40, 8, 3, 4, 39, 11, and shown on the plats by red 17. This location, if legally justified, would give the plaintiffs a paper title for all of Lot 31 between the lower end of the Anderson lot indicated by the line 3, 4, and the river.

At the trial the plaintiffs offered the following prayers which were granted:

No. 2. If the jury find the execution and delivery of the deed from Nowland to White in 1837, and that White, under said deed, took possession of the land lying between high-water mark, in front of said lots, and low-water mark of the Susquehanna River, and wharfed out, filled in, and reclaimed from the water the land in front of said lots, and that he was in possession of said shore and said reclaimed land, except the part conveyed to Rinehart in 1855, until 1864, and that he then executed and delivered to James A. Davis the deed of that date offered in evidence, and that under said deed to him the said Davis entered into possession of the aforesaid land (with the exception aforesaid) and rights, and continued still further to extend the boundaries of said land, in the same manner as that pursued by said White; and shall further find that such possession by said White under his deed of 1837, and such possession by said Davis, under his deed of 1864, was adverse, uninterrupted and exclusive for more than twenty years, then the title of the said Davis to said land was a good and sufficient title in law.

No. 3. If the jury find the execution and delivery of the deed of 1837 from Nowland to White, and that under said deed White entered upon said land and improved the same, reclaiming it from the water, and, by filling in and wharfing out, brought the land in front of said lots out of the water and made fast land of it; and further find that said White continued in the possession of said land, except what he conveyed to Rinehart, until 1864, and that he then executed and delivered to James A. Davis the deed of that date offered in evidence, and that said Davis entered into the possession of said land, with the exception aforesaid, under his said deed, and continued the work of said White, by still further reclaiming from the water, land in front of Lots Nos. 30 and 31, in the same manner in which White had done; and that such possession by White, under his deed of 1837, and of Davis under his deed of 1864, was exclusive, uninterrupted and adverse for more than twenty years, then said Davis' title was a good and sufficient title in law.

No. 4. If the jury find the execution and delivery of the deed from David White to James A. Davis in 1864, then, by its true construction, said deed conveyed to Davis all the interest of White in the land reclaimed from the river by White, known as "The water privilege of Lots 30 and 31."

No. 6. If the jury find that, in 1864, the land reclaimed below Water street, in Port Deposit, opposite Lots Nos. 30 and 31, had acquired and was known by the name of "The water privilege of Lots Nos. 30 and 31;" and further find the execution and delivery of the deed, offered in evidence, from David White to James A. Davis, in 1864, then by its true construction conveyed all of said land to said Davis.

No. 7. By the true construction of the deed from David White to Edwin J. Rinehart, of 1855, offered in evidence by the defendant, the land thereby conveyed is to be ascertained by commencing at the southwesternmost corner of Lot No. 31, at the point where said corner is designated and located on the original Hugh Beard plat, made in 1812,

and recorded on the 3rd day of April, 1815, in Liber J. S.,
No. 10, folio 500, one of the Land Record Books of Cecil
County, and running thence by and with the lower or river
line of said Lot No. 31, on the same line as located on
said original plat made by Hugh Beard in 1812, that is to
say, on the original street line, by the courses given on said
plat, 40 feet to the southeasternmost corner of said lot;
thence by and with the extension of the southeastern side
line of said Lot No. 31, 60 feet toward the river Susque-
hanna; thence by a line parallel to the second line, 60 feet
to the place of beginning, that is to say, to the original
street line, as the same is designated in the Hugh Beard
plat.

No. 13. If, under the instructions of the Court, the jury
find a verdict for the plaintiff, and that the defendant cor-
poration has used for its own purpose the land of the said
plaintiff intestate, then the said plaintiffs are entitled to dam-
ages on the basis of what would be a reasonable sum to be
paid for the use of his land by the defendant, for the pur-
pose of building and maintaining its institute.

No. 14. The jury is instructed that the defendant has not
shown any paper title to any land between Water street
and the Susquehanna River, in Port Deposit, opposite Lots
30 or 31, except as to the land conveyed to White by Isaac
Nowland and by David White to Rinehart, and, therefore,
it can have no title, except it be by adverse possession to
the rest of said land; and, in order to have a title by ad-
verse possession it must prove to the jury that it, or those
under whom it claims, have been in the adverse, exclusive
and uninterrupted possession for twenty years of such land.

No. 15. If James A. Davis was in the possession of any
land between Water street and the railroad tracks, as shown
on the plot made in this case, and Joseph B. Pugh requested
said Davis to permit him to use and occupy said land, and,
in consequence of said request and Davis' permission, said
Pugh occupied the same, then Pugh's possession would not

be an adverse possession, but would in law be Davis' possession as to the part so occupied by Pugh.

And the defendant offered the following prayers :

No. 1. That there is no evidence in this case legally sufficient to entitle the plaintiff to recover for any alleged trespasses committed by defendant on any part of the land conveyed by the deed from Isaac Nowland to Allan Anderson, if the jury find the same is truly located by either of the defendant's locations thereof.

No. 2. That there is no evidence in this case legally sufficient to entitle the plaintiffs to recover for any alleged trespasses committed on that part of Lot No. 31, or the accretions thereto lying east of the right of way of the Columbia and Port Deposit Railroad Company as located by plaintiff on the plat.

No. 3. That if the jury find the deed from James A. Davis and others to Joseph B. Pugh, dated the 29th day of June, 1871, and that the same is truly located by defendant on the plat, and also the deed from William J. Jones and Clinton McCullough, trustees, to the vestry of St. James Church, that then the plaintiffs cannot recover for any alleged trespasses committed on the land conveyed by said deeds, as located on the plats.

No. 4. That there is no legally sufficient evidence of possession by James A. Davis of the land in controversy at the time of the acts complained of to entitle the plaintiffs to recover in this action.

No. 5. Defendant prays the Court to instruct the jury that the deed from David White to James A. Davis, offered in evidence by the plaintiffs, conveys no title to land and is not sufficient to give the said Davis title to the land claimed by him under the locations in this case.

No. 6. That the deed from David White to James A. Davis, offered in evidence by the plaintiff, does not operate to give to said James A. Davis color of title to the land claimed by defendant under the deed to it from E. John

Rinehart and others, dated July 29th, 1890, and offered in evidence by defendant, or any part thereof.

No. 7. If the jury find the plat of the Sarah M. Thomas lots made by Hugh Beard, offered in evidence, and the lease of Lot No. 31 on said plat made by said Sarah M. Thomas to Elizabeth White and Catharine White, and the deed for said lot from said Catharine White and Elizabeth Gilmore and David Gilmore, her husband, to David White, and the deed from said David White to Isaac Nowland, all offered in evidence, and that said lot is truly located by defendant under either of its locations, and that said lot as originally laid out bounded upon or adjoined the waters of the Susquehanna River, and that the said river is a navigable tide-water stream, that then all accretions to said lot, whether made by natural or artificial causes or by both combined, belong to the owners of said lot, whether made by said owners or by others.

No. 8. If the jury find the deed from David White to E. J. Rinehart, offered in evidence, and that the land thereby conveyed extended below high-water mark on the Susquehanna River, and shall further find the deed from David White to James A. Davis, that then by the true construction of the last mentioned deed no right or interest passed to said James A. Davis in Lot 31, either as to the land thereof or the water privilege connected therewith.

No. 9. That there is no evidence in this case legally sufficient to show that James A. Davis had acquired good title to any part of the additions or accretions to Lot 31 by adverse possession.

No. 10. That by the true construction of the deeds from Isaac Nowland to David White and from David White to James A. Davis, the same would operate to convey to the grantees, if anything, only the privileges in the water in Lots Nos. 30 and 31 from the point where high tide reached on said lots or the accretions thereto at the time the said deeds were made, respectively.

No. 11. If the jury find that Lot No. 31 mentioned in

the evidence as originally laid out in the Hugh Beard plat also offered in evidence, if they find said plat, bounded on the Susquehanna River, and also find the deed from David White to Edwin J. Rinehart, and also find that at the date of said deed said Lot 31 had been extended by accretions into said river, and that the holdings under said deed to Rinehart had always been from the foot of the extension, that then in construing said deed the true beginning point of land therein described is at the southwesternmost corner of said Lot 31, as extended, and not as originally laid out, and that the said Edwin J. Rinehart and those claiming under him by his will and the deeds offered in evidence, if they find said will and deeds, as against the said James A. Davis, are entitled to sixty feet from said true beginning point running towards the Susquehanna River.

No. 12. If the jury find the deed from David White to Edwin J. Rinehart, offered in evidence, and that the said Rinehart (under color thereof), went into the occupation of the land described therein as the same is located by the defendant under either of the locations thereof, or as located as the adverse holding of E. J. Rinehart, and filled up the same above ordinary high tides until it became dry land, and that the said Rinehart and those who claim under him by his will and the deeds from Charles Rinehart to E. John Rinehart and from said E. John Rinehart and others to defendant, offered in evidence, if the jury find said will and deed, have by themselves, their tenants, agents or servants held the actual use and occupation of said land from the making of said deed from David White down to the present time, and that such use and occupation has been continuous, exclusive, notorious and under claim of title, and for a period of twenty years, that then the defendant has shown good title to said land, and the plaintiffs are not entitled to recover in this action for any acts committed thereon by defendant.

No. 13. If the jury find the facts stated in the preceding prayer, or 12th prayer, and further find the deed from James

A. Davis and wife, to the C. & P. D. R. R. Co. offered in evidence, and that the same is truly located and that the railroad embankment of said company was built on the land conveyed by said deed and within the ordinary flow of the tide waters of the Susquehanna River, and abutted on the lands mentioned in the preceding prayer, and that at the completion of said railroad the ordinary tides of said river opposite to Lot. No. 31, mentioned in the evidence, came up to and against the embankment of said railroad, and that the land opposite to said lot is accretions to said embankment of said railroad, that then the plaintiff cannot recover in this action for any acts committed by the defendant on said accretions, unless they find that said James A. Davis, at the time of the committing of said alleged trespasses [had been] [was] in the [adverse] possession of said accretions after they reached above the ordinary high tide of said river [by actual use and occupation thereof, which use and occupation must have been open, notorious and exclusive and under claim of title for a period of twenty years].

No. 14. If the jury find the several deeds and wills and proceedings for settlement of estate of Allan Anderson and sale of estate of Joseph B. Pugh offered in evidence by the defendant conveying and devising Lot No. 31, and the additions thereto [and the lands therein conveyed are truly located by defendant under either of its locations], and further find that E. John Rinehart and Charles Rinehart are the only children of E. J. Rinehart, and that the several grantees and devisees therein mentioned, held, used and occupied [said] [all] lands [east of C. & P. D. R. R.] during the periods of their respective ownerships, and that said holding, use and occupation by said grantees and devisees respectively was open, notorious, exclusive, continuous, adverse and under claim of title and for a period of twenty years, that then the defendant has shown good title to all of said Lot No. 31 and the additions thereto ; if the jury find there are such additions, lying east of the right of way of the Columbia and Port Deposit Railroad Company, and west of the main street

of Port Deposit, formerly called Water street, if the jury find it was so called.

No. 15. If the jury find the facts stated in the preceding prayer, and further find that the land lying west of the eastern boundary of the right of way of said railroad company within the said lines of said Lot 31 extended, and included within defendant's location, if they find said location correct, are an accretion to the lands lying within said lines, on the eastern side of said boundary, whether by artificial or natural causes, or both combined, that then the defendant has shown good title to said land lying west of said boundary, and claimed by the plaintiffs' intestate, and the plaintiffs cannot recover for acts committed thereon by defendant, unless they shall further find that James A. Davis had held said land by actual use and occupation after it had arisen above ordinary high-water mark for twenty years before the acts complained of by the plaintiffs, if they find such acts, and that said occupation by said Davis must have been open, adverse, notorious, continuous, exclusive and under claim of title.

No. 16. If the jury find that at the time of the making of the deed from David White to James A. Davis, the said Davis was not the owner of any of the fast land of Lots Nos. 30 and 31 therein mentioned and adjoining the Susquehanna River, that then by the true construction of said deed it does not operate to confer on said Davis or his administrators any right of action for the alleged trespasses complained of in this suit.

No. 17. If the jury find the execution and delivery of the several deeds, wills, papers and proceedings offered in evidence by the plaintiff, and that the land described in the same are truly located, and that E. John Rinehart and Charles Rinehart are the only children of Edwin J. Rinehart, that then the defendant has shown good paper title to all the parts of Lot No. 31, and the additions thereto, lying between the western boundary of Main or Water street, in said town, and the eastern boundary of the right of way of

the Columbia and Port Deposit Railroad Company, if they find said right of way is truly located.

No. 18. The jury is instructed that the plaintiffs have not shown any paper title in James A. Davis to any land between Water street and the Susquehanna River, in Port Deposit, opposite to Lot 31, and therefore he can have no title except it be by adverse possession, and in order to have title by adverse possession they must prove to the jury that he, or those under whom he claims, has been in the adverse, exclusive, uninterrupted, continuous and notorious possession of said land and every part thereof for twenty years before this suit.

Of the defendant's prayers, the 1st and 3rd were conceded, and the 2nd, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 15th, 16th, 17th and 18th, were rejected by the Court. The 12th was modified by the Court by striking out the words "under color thereof," and was granted as thus modified; and the 13th prayer was modified by the Court by striking out the words "had been" and substituting "was" therefor, and by striking out the words "adverse" and "by actual use and occupation thereof, which use and occupation must have been open, notorious, exclusive and under claim of title for a period of twenty years." Said words so stricken out and substituted being enclosed in brackets, and was granted by the Court as so modified. And the 14th prayer was modified by the Court by striking out the words "and that the lands therein conveyed are truly located by defendant under either of its locations," and by striking out the word "said" and substituting the word "all," and inserted the words "east of C. & P. D. R. R." all of said words so stricken out, substituted and interlined, being enclosed in brackets, and was granted by the Court as so modified.

The jury returned a verdict for the plaintiffs.

The cause was argued before McSHERRY, C. J., BRYAN, BRISCOE, BOYD and PEARCE, JJ. (Jan. 11 and 12, 1898).

*L. Marshall Haines* and *A. L. Crothers*, for the appellant.

*Albert Constable* and *John S. Young* (with whom was *Wm. T. Warburton* on the brief ), for the appellees.

BRYAN, J., delivered the opinion of the Court.

The Jacob Tome Institute of Port Deposit has appealed from a judgment rendered against it in favor of the administrators of James A. Davis, deceased. Davis brought an action of *quare clausum fregit* against the appellant, which was continued after his death by his administrators. The merits of the controversy depend on occurrences which took place many years ago. As might naturally be expected, some of them are involved in considerable obscurity. Before considering in detail the rulings of the Court below, we will state the facts in evidence with their legal effect and consequences, so far as it may be necessary for a decision of the questions presented by the record.

The town of Port Deposit is situated on the eastern bank of the Susquehanna river. In the year eighteen hundred and twelve Hugh Beard made a plat which showed the division of a portion of the village into lots; and this plat was recorded among the Land Records of Cecil County. A number of these lots were exhibited on the plat as reaching down to the edge of the river, and a street thirty-three feet wide was described as beginning at the water's edge and extending into the river. The western line of these lots and the eastern line of the street, and the edge of the river were coincident with each other. It will be seen that it was the purpose that the street should be constructed in the waters of the river immediately below its margin. In the year eighteen hundred and twenty-four, Sarah M. Thomas leased two of these lots to Elizabeth and Catharine White for the term of ninety-nine years, renewable forever. They were described as follows: "All those two lots or pieces of ground situate and being in a town called Port Deposit, on the northwest branch of the river Susquehanna, in the said

county of Cecil, of which a plat was recorded among the
Land Records of said county, the third day of April,
eighteen hundred and fifteen, in Liber J. S., No. 10, folio
500, and being two lots fronting each forty feet on Water
street, and running back from the river north forty-five
degrees, twenty minutes, east one hundred and sixty feet,
containing twenty-three and a-half square perches of land,
each being distinguished and marked on the said plat by
the numbers thirty and thirty-one." The plat mentioned
in the lease is the one made by Hugh Beard. These lots
were designated by distinct boundaries, and the quantity of
land within these boundaries is stated with exactness. They
were bounded on a projected street; but the land on which
the street was to be constructed was under water, and did
not belong to the lessor. The State being the proprietor
of the bed of the river below high-water mark owned the
land on which the street was to be made, although it was
covered with water. The lessees of the lots therefore
could not acquire from their lessor any title to the bed
of the street, or to any part of it. In fact it was not lawful
to construct the street below high-water mark without au-
thority derived from the State. Before the street was made,
the lessees owned a perpetual leasehold in the land down to
high-water mark, and were therefore entitled to the ordi-
nary riparian rights of alluvion and dereliction. But when
a street thirty-three feet wide built on the land of another pro-
prietor should be interposed between them and the river,
they would be effectually cut off from the water; and they
could not be regarded in any sense as riparian proprietors;
that is, as owners of land bounding on the water. It is
difficult to ascertain from the record what was the actual
physical condition of this street at the time the lease was
made in eighteen hundred and twenty-four. It is, however,
of very little consequence in this discussion. The evidence
tends to show that it·had not advanced much beyond rude
beginnings. Whether complete or incomplete the struc-
ture was a trespass on the property of the State. The con-

sequences would have been embarrassing to the lot owners, if the State had made a rigorous assertion of its rights. The Legislature, however, came to their relief by the Act of 1824, chapter 33. This Act incorporated the village of Port Deposit. By the fourteenth section it was enacted, " That each and every of the proprietors of lots binding on and entitled to the privileges of the water in said village, shall be, and are hereby permitted to wharf out, extend and improve the whole front of their several lots respectively, and for such distance, as from time to time, they may think fit." Up to this time the street had been an encroachment on the land of the State. The owners of these lots had no right to fill up the public waters in front of their land. They could acquire no title to the firm land made by such filling, whether it was done for the purpose of constructing a street, or making a building site. But the Act of Assembly bestowed upon them new rights of property. It authorized them to extend their lots into the water, not merely as far as the width of a street, but for such distance as they might think fit. Before this Act they had been trespassers, but by legislative enactment they became owners. A similar right had been given to riparian owners in the city of Baltimore by the Act of 1745, chapter 9. The evidence shows that the proprietors of all the above-mentioned lots on the Beard plat availed themselves of the privileges conferred by the Act of Assembly; and that the entire front of these lots has been extended a very considerable distance into the Susquehanna. When these extensions were made, they became statutory additions to the original lots, and were held by the same title. In fact, they were the original lots made larger. Their legal identity was not changed by an increase of their dimensions.

Lots thirty and thirty-one were duly assigned to David White; and in eighteen hundred and thirty-three they were assigned by him to Isaac Nowland. Large additions had been made to them in the meantime by fillings in the river, and the making of fast land in front of

them.   These extensions have been continued from time to time, and now cover a large space; but it is very difficult, perhaps impossible to ascertain their exact limits at any particular date many years ago.   In eighteen hundred and thirty-seven Nowland conveyed to David White, his heirs and assigns, a certain interest in these lots called in the deed " all the entire water privilege" of lots thirty and thirty-one.   This property is described in the deed as follows : " commencing for the said water privilege at the top of high-water mark on the river Susquehanna, and running thence into the river, embracing all the entire water privilege of the said two lots on the said river Susquehanna."   It will be perceived that the deed does not purport to convey any fast land; but it seeks to convey land below high-water mark in the bed of the Susquehanna.   As has been already said this land belonged to the State, but Nowland had by the Act of eighteen hundred and twenty-four, section thirty-three, the right to "extend and improve" the whole front of his lot into the water.   A right of the same description under the Act of 1745, chapter 9, relating to the city of Baltimore, was in *Casey* v. *Inloes*, 1 Gill, 501, stated by this Court to be " a franchise ; a vested right, peculiar in its nature; a *quasi* property."   The deed in question could not operate to give White a less interest than an irrevocable license to make "these extensions and improvements" into the river for his own benefit, with à right to hold as his òwn the fast land thus made.   The deed was made for a moneyed consideration on a lawful contract; and we must give effect to it, as far as we rightfully can, according to the intention of the parties.   Nowland certainly had the right to authorize White to make the improvements which he himself could make.   But there is nothing in the deed which by any reasonable construction can give to White a title to any of the fast land which had been already made above high-water mark.

In eighteen hundred and thirty-nine Nowland conveyed to Allan Anderson part of No. 30 and nearly the whole of

the original Lot No. 31, and the whole of the extension
which had been added to it by the fast land made in the
Susquehanna.   The land is described as parts of these two
lots, and also an additional water lot; and the boundaries
run according to the terms of the deed to the water edge of
the Susquehanna River, fifty-nine and a-half feet west of the
original lots.   We must here note that White's purchase
began at high-water mark and that this lot would meet it at
the water's edge, supposing that there had been no change
in the high water line.   According to the evidence White
made fast land by wharfing and filling within the limits of
his deed from Nowland.

In eighteen hundred and fifty-five White and his wife
made a conveyance to Edwin J. Rinehart and his heirs of
all that part of a lot or parcel of land known and described
as the water privilege of Lot No. 31; and it is stated in the
deed that said part of said water privilege is described more
particularly as follows, that is to say: " Beginning for the
same at the southwesternmost corner of said Lot No. 31,
and running thence by and with the lower or river line of
said Lot No. 31 forty feet to the southeasternmost corner
of said lot; thence by and with the extension of southeast-
ern side line of said Lot No. 31 sixty feet toward the
river Susquehanna; thence by a line parallel to the first
line of the land hereby conveyed forty feet, and thence by
a straight line parallel to the second line hereof sixty feet
to the place of beginning, it being a part of the same land
which was conveyed to the said David White by one Isaac
Nowland, by his deed bearing date on the seventeenth of
April, in the year eighteen hundred and thirty-seven. " This
water privilege is described as a part of the land conveyed
to White by Nowland by the deed above-mentioned.   The
Nowland deed describes White's water privilege as com-
mencing at the top of high-water mark, and running into
the river.   It bounded on the westerly side of Lot No. 31,
as extended, which was the river line of that lot.   When the
Rinehart deed says that the water privilege conveyed by it

commences at the southwesternmost corner of Lot 31, and runs with its river line, it is most absolutely certain that it was intended to designate what was the high-water mark when Nowland's deed to White was executed.   The evidence shows that considerable extension had been made from the land into the river in the time intervening between these two deeds.   It is not possible, we think, to suppose that the corner of Lot 31 mentioned in this deed means a corner marked on Beard's plat, which was about sixty feet from the shore when White acquired his water privilege beginning at high-water mark.   It is important to mark the beginning of this description, because the Tome Institute deduces partly from this deed its title to the land occupied by it.   It also derives title by *mesne* conveyances from the Anderson deed.

In eighteen hundred and sixty-six White and his wife conveyed to James A. Davis " the entire water privilege of lots number thirty and thirty-one ;" in the words of the deed, " commencing for said water privilege at the top of high-water mark on the river Susquehanna; and running thence into the river, embracing all the entire water privilege of the said two lots on the said river Susquehanna, being the same lots the said David White obtained from Isaac Nowland."   We suppose it to be clear that high-water mark mentioned in this deed means the mark which existed at its date.   If at this time White owned any fast land bounding on the river, he had the right to extend his land into the water, and he could convey to Davis the same kind of a title which he had acquired from Nowland.   He had in eighteen hundred and fifty-five conveyed a tract extending sixty feet towards the Susquehanna from what was the high-water mark at the date of his deed from Nowland in eighteen hundred and thirty-seven.   If this sixty feet comprehended all the fast land, which he then had, he had no interest left, and he, therefore, could not convey anything to Davis.   It is a question of fact arising on the locations, and the decision was for the determination of the jury.

There are other deeds in the record conveying title to the Tome Institute; but these which we have mentioned shew the boundaries which are in contest between the parties in this case.   It was alleged in the declaration that the Tome Institute had committed a trespass on Davis' land; that is on the land conveyed to him by White and his wife.

A warrant of resurvey having been issued, a great many locations were made by the parties.   It has been our purpose in what we have said to indicate the rules by which the locations should have been made, and also to make our opinion known on the other important questions in the case. We think that we have decided the essential questions before us.   But as the case must be tried again, it is our duty to decide all of the numerous exceptions which were taken at the trial.   We shall proceed to consider them in detail; for the sake of convenience beginning with the prayers.

We see no objection to the first prayer granted on behalf of the plaintiffs, marked No. 2 in the record.   The year eighteen hundred and sixty-four is mentioned in the prayer instead of eighteen hundred and sixty-six.   We understood that this matter was explained at the argument.   At all events no objection was made on this ground in the Court below or in this Court.   Plaintiffs' No. 3 was properly granted.   Nos. 4 and 6 ought to have been rejected, inasmuch as we think that the deed from White to Davis, as we have already stated, conveyed no land above the high-water mark of the river, as it existed at the date of the deed. No. 7 ought to have been rejected for the reason which we have already stated in discussing the deed from White to Rinehart.   On the hypothesis of the thirteenth prayer the plaintiff ought to recover compensation for the damage done by the defendant.   This is usually measured by a reasonable rent for the land wrongfully occupied, where there is nothing in the case to authorize punitive damages, and there is no such element in this case.   This prayer is not clear on this point, and might mislead the jury into believing that they could allow damages commensurate with the benefit

derived by the defendant from the use of the land. The
law will not permit such a rule ; in the absence of circum-
stances of aggravation it allows the injured party indemnity
for his loss, and nothing more.     In *B. & O. R. R. Co.* v.
*Boyd,* 67 Md. 32, where there was no evidence of special dam-
age, this Court said that the plaintiff was entitled to recover
a fair rental of his land which had been occupied by the de-
fendant.    On account of the misleading character of the
thirteenth prayer it ought not to have been granted.    No.
14 ought to have been rejected, because it disregarded the
deed from Nowland to Anderson.    No. 15 was properly
granted.    It maintains a self-evident proposition, and is ob-
jected to only on the ground of a want of evidence to sup-
port it.   It will be more convenient to consider this objec-
tion when we take up the exceptions to the testimony.
Defendant's prayers No. 1 and No. 3 were conceded.    No.
2 and No. 4 present a question of failure of evidence.    The
evidence will be stated when we take up the testimony.    At
present it is sufficient to say that they were properly refused.
No. 5 was properly refused for the reason stated when we
construed the deed from White to Davis.    No. 6 is in these
words : " That the deed from David White to James A.
Davis, offered in evidence by the plaintiff, does not operate
to give to the said James A. Davis color of title to the land
claimed by defendant under the deed to it from E. John
Rinehart and others, dated July 29th, 1890, and offered in
evidence by defendant, or any part thereof." The land
claimed by the defendant under the deed in question was
located on the plat, but it was the province of the jury to
determine whether the location was correctly made.    The
Court could not grant this prayer without deciding this
question.    It was, therefore, properly rejected.    The sev-
enth prayer ignores the deed from Nowland to White and
those made by White.    The Court properly refused to
grant it.    No. 8 asserts that if the land conveyed by White
to Rinehart extended below high-water mark on the river,
that the subsequent deed from White to Davis conveyed no

title. On the hypothesis stated Rinehart would be the riparian owner, and would be entitled to extend the lot into the water, and White would have no interest remaining in him. The Court committed an error in rejecting this prayer. We approve of the rejection of prayer No. 9. A correct proposition was stated in No. 10 and it ought to have been . granted. We have shown in a previous part of this opinion that No. 11 states the true construction of the deed from White to Rinehart. It is sufficient to say that it will be apparent from what we said in the early part of this opinion that the defendant's twelfth, thirteenth, fourteenth, fifteenth and seventeenth prayers ought to have been granted in the form in which they were offered ; and that the sixteenth and eighteenth prayers were properly refused.

The exceptions to the rulings on the evidence are next in the order which we have adopted for the decision of the questions on the record. The first exception is to the admission in evidence of the deed from Nowland to White, and the one from White to Davis. It is unnecessary for us to repeat what we have said about these deeds. The next exception was to the competency of the witness Sullivan. The objection was stated to be on the ground that he was not present on the survey. The witness testified in answer to a question by the court that he was present during the survey at the site of the Tome Institute, and was there during the entire day while the county surveyor was making his survey in the case; and no other testimony was offered to the Court on this point. Evidence was given tending to show that Davis had been in possession of the land in dispute using and claiming it as his own property, for more than twenty years. In the third exception a witness testified that during this possession in the year eighteen hundred and seventy-five, Joseph B. Pugh, who was a partner and an intimate friend of Davis, built a cow-shed and a fence around a cow-yard, but before doing so he asked from Davis permission to build them. Defendant excepted to this evidence, but the Court admitted it. The evidence

was competent to show that the use of the land by build-
ing the shed and fence was not adverse to the right of
Davis, and did not displace his possession; but, was by
his permission, and not a hostile invasion of his premises.
The evidence which we have mentioned will show that the
second, fourth and fifteenth prayers of the defendant were
properly refused. In the fourth exception the Court ad-
mitted testimony that the firm of Davis and Pugh were
charged rent on the books of the firm in favor of James A.
Davis for the use of the land opposite Lots 30 and 31.
This evidence was competent to show that the possession
of Davis and Pugh was by consent of James A. Davis,
and was in acknowledgment of his title by payment of
rent. It could not, therefore, in law, defeat or interrupt
his possessory right. It did not tend to prove any title in
Davis, but it showed that the occupation was not a posses-
sion adverse to him.

Because of the errors mentioned, the judgment must be
reversed, and a new trial will be ordered.

*Reversed and new trial.*

(Decided March 3rd, 1898).