[Civ. No. 2668. Fourth Dist. Dec. 11, 1941.]

JEAN BOURDIEU, Appellant, v. SEABOARD OIL COR-
PORATION OF DELAWARE (a Corporation) et al.,
Defendants; KETTLEMAN NORTH DOME ASSOCIA-
TION (a Corporation), Respondent.

430

Chandler & Wright, Walter H. Stammer and Oliver S. Northcote for Appellant.

George W. Nilsson, Arthur C. Shepard and Monta W. Shirley for Respondent.

GRIFFIN, J.—On a former appeal this case was presented for consideration of the pleadings and the controversy arising therefrom. (*Bourdieu* v. *Seaboard Oil Corp.*, 38 Cal. App. (2d) 11 [100 Pac. (2d) 528].) The nature of the action is there fully set forth. As will be noticed, appellant is the owner of the surface rights to section 30, township 21, south range 17 east, M. D. B. & M., Fresno County, in the North Dome of the Kettleman Hills Oil Fields. He acquired his rights to the north half of that section by virtue of making entry thereon in March, 1919, and to the south half of that section by entry and filing in September, 1919. He secured his patent to the north half in October, 1925, and to the south half in January, 1926. After making entry appellant built

his home on that section, farmed approximately 40 to 60 acres, put up corrals and fences and used the section as his home and headquarters for his sheep ranch. He continued so to use this land until September, 1931, at which time the respondent Kettleman North Dome Association, hereinafter referred to as K. N. D. A., by virtue of a federal oil and gas lease, entered upon section 30 and commenced the drilling of an oil well. Thereafter, it made further entries and drilled and completed 15 additional wells on that section and completed an elaborate system of roads, fuel gas lines, wet gas lines, gas lift lines, water lines and oil lines, on section 30 and throughout the North Dome of Kettleman Hills, including many sections other than section 30. This system is not confined to section 30 nor is it confined to the operation of lands covered by the lease under which respondent operates section 30, but the system is connected with and operates as a part of the entire K. N. D. A. joint system for the Kettleman Hills North Dome, which covers an area 17 miles long and 1½ miles wide. Appellant also completed on section 30, in 1934, a large compressor plant and cooling tower, water tanks and smaller plants, as well as two 5,000 barrel oil storage tanks and certain shipping pumps all of which were also connected with and made a part of the K. N. D. A. system during the three-year period from March 30, 1935, to March 30, 1938. During that period respondent used these plants, tanks, pumps, lines and roads on section 30 in handling oil and gas produced not only on section 30 but also from lands other than section 30, and during this time actually compressed in the large compressor plant located on section 30, according to the proffered proof, over 13,000,000,000 cubic feet of gas produced from lands other than section 30 which gas, after such compression, was used on lands other than section 30, and also stored, handled and shipped on and through section 30, over 1,000,000 barrels of oil which were produced on lands outside of section 30 and used otherwise than on that section.

Appellant's suit is for damages for respondent's continuing trespass and wrongful use of his homestead as set forth. It will be remembered that respondent, under its leasehold right, had not only the right to extract the oil and gas, but also the appurtenant right to enter and to use and occupy so much of the surface of the land as may be required for all purposes reasonably incident to the mining and removal of

the oil and gas therefrom. This was determined by the former appeal. In addition to this determination this court also held on the previous appeal that the two causes of action there set forth in detail stated a cause of action, and that the entries made and the wrongful use and occupancy within three years prior to the filing of the action, were not barred by the statute of limitations. This court then said that:

"The issue of how much of the surface is required for all purposes reasonably incident to the mining and removal of oil and gas or other minerals from the homesteader's land ordinarily would be a question of fact to be determined on trial."

Prior to the trial an amendment to the amended complaint above construed was filed by stipulation. This amendment apparently was filed due to the fact that the amended complaint did not clearly allege in detail the injury caused by the increased use of appellant's land by respondent, as pointed out in the previous opinion.

In reference to the two causes of action above mentioned, this court in the previous decision (*Burdieu* v. *Seaboard Oil Corp., supra*), at p. 23, summed up its ruling in the following language:

" . . . we believe the judgment must be reversed for the reasons heretofore stated, namely,—that appellant can recover on his first cause of action for all damages caused by the *entries* upon the north half of appellant's land made by respondents within the statutory period; and also that the *use* and occupancy of both parcels of appellant's land by respondents to handle oil and gas produced on other tracts of land is in the nature of a continuing trespass, and appellant may recover for such resulting damages as he has sustained within the three years next preceding the filing of this action." (Italics ours.)

This determination has become the law of the case. (*Penziner* v. *West American Finance Co.,* 10 Cal. (2d) 160 [74 Pac. (2d) 252].) After the judgment became final on the former appeal each defendant, except K. N. D. A., denied they had made any entry or use of section 30 and alleged that all their rights acquired by leases from the federal government had been transferred and assigned to the respondent K. N. D. A., under the unit agreement discussed in the pre-

vious opinion (*Burdieu* v. *Seaboard Oil Corp., supra*) at p. 22. When the case was called for trial, appellant introduced the unit agreement in evidence. All defendants were dismissed by nonsuit excepting the respondent K. N. D. A. No appeal has been taken from that judgment of nonsuit as to those defendants. The trial proceeded against the remaining defendant.

It is now appellant's contention that the trial court committed the following errors: (1) That it refused to allow the appellant to prove the *extent* of the wrongful use and occupancy of appellant's lands after he had proved, and it was admitted, that the respondent had, without appellant's consent, used facilities and structures on section 30 to handle oil and gas produced from tracts of land outside of section 30 during the three-year period preceding the filing of the complaint. (2) That the court erroneously struck appellant's exhibit 14 from the records. (3) That it refused to allow appellant's exhibit 14a to be introduced in evidence. (4) That it refused to allow expert witnesses to testify what, in their opinion, was the reasonable rental value, or the reasonable value of the wrongful use of section 30 for the purposes for which it was wrongfully used by the respondent during this period. (5) That it erroneously directed the jury to bring in a verdict for the respondent.

The respondent's answer denied that any of the facilities installed by it were used in connection with respondent's operation of lands other than those covered by its lease, and denied that such facilities occupied any more of the surface of section 30 than were required for all purposes reasonably incident to the drilling of wells on section 30 and the removal of oil and gas therefrom, except certain oil lines, etc., "which were used to a slight degree in connection with some of the operations on other lands" covered by its lease. Exhibit 14, above mentioned, stipulated to be a correct compilation of gas and oil handled on section 30 during the three-year period in question was by the court first admitted in evidence and later ordered stricken from the record. This exhibit shows the total gas production from section 30 during this period to be 19,173,881,000 cubic feet; that the total gas compressed in the plant thereon during this period was 33,-371,439,000 cubic feet, and that the total gas compressed for use on section 30 was 20,017,824,000 cubic feet, thus showing

that 13,353,615,000 cubic feet of gas or approximately 40 per cent was brought onto section 30 from other lands, treated in the compressor plant, and shipped off of section 30 to be used elsewhere by the respondent during the three-year period. This evidence was admissible as bearing on the extent of the reasonable use of appellant's lands appertaining to the compressor plant and should have been allowed to remain in evidence.

Exhibit 14a (being a page from Exhibit 14) showed that 1,003,215 barrels of oil were produced from lands other than section 30 and stored in and shipped from and through tanks and shipping pump on section 30 during this three-year period. This exhibit should have been allowed to remain in evidence for the same reason. Counsel for appellant on many occasions endeavored to re-offer testimony and evidence on this subject for the purpose of ascertaining the "amount of, and the extent of the unlawful user," as a foundation for proof of damages. The trial court sustained objections to such evidence and refused to allow appellant's expert witness to testify in reference to the reasonable value of that unauthorized use. It was stipulated by counsel for respondent that " . . . the oil produced from well No. 8 on section 20–J went across to the tank on the northeast quarter of 30–J. . . . " The evidence establishes that many wells, sumps, roads, water lines, gas and fuel lines, trap and flow lines were either commenced or completed between March 30, 1935, and March 30, 1938, on the north half of section 30. Appellant testified that he could no longer make use of this property except "part of it and the west end of section 30," because the "land was already all tore up by oil wells and roads and my sheep was disturbed by all the compressors and trucks and cars."

The superintendent of K. N. D. A., called under section 2055 of the Code of Civil Procedure, testified generally as to the use made of section 30 in conjunction with the wells located on other sections, and when examined by counsel for respondent, by consent, he testified that if the facilities used on section 30 were not employed in conjunction with the facilities on the other sections and the K. N. D. A. was obliged to operate section 30 as a separate unit, it would cast a greater and additional burden on the property than at present.

█  Appellant called an expert witness who duly qualified as such and testified that " . . . there are more facilities on section 30 than are reasonably necessary for handling the production from section 30." Certain of these items were pointed out to the jury by the witness from an exhibit showing all of the facilities on section 30. The witness was asked if section 30 could not have been operated as a separate unit instead of being operated under the unit system. Objection to this line of testimony was sustained by the trial court. It was clearly admissible at least for the purpose of contradicting the evidence brought out by respondent, and if admitted would no doubt create a conflict in the evidence, which conflict would be a matter for the determination of the jury. This witness was also prepared to testify as to the reasonable value of the use and occupation or the reasonable rental value of the use of the north half of section 30 for the handling of oil produced on lands other than section 30 during the three years in question. The court refused such testimony on the ground that "It does not tend to prove or disprove any issue involved in this case." After considerable argument with the court, counsel for appellant rested his case. Thereupon, the trial court instructed the jury that "under the law there is absolutely no evidence before you upon which to base any matter of damages, so . . . retire and return a verdict into this court in favor of the defendant." From the verdict thus returned plaintiff appeals, as well as from the judgment entered upon it.

From an examination of the proffered evidence, the questions presented on appeal and the final conclusion reached in appellant's brief, it appears that he is now only seeking to recover under the second cause of action for the reasonable value of the beneficial use wrongfully made by respondent of appellant's lands during the three-year period, which wrongful use has been described as in the nature of a continuing trespass.

█  Respondent first contends that pursuant to and notwithstanding the limitations of respondent's rights under the Agricultural Entry Act of July 17, 1914 (U. S. C. A., Title 30, secs. 121, et seq.) and the Stock-Raising Homestead Act of December 29, 1916 (U. S. C. A., Title 43, secs. 291, et seq.) under its lease from the United States by virtue of the Min-

eral Leasing Act of February 25, 1920 (U. S. C. A., Title 30, secs. 181, et seq.) of 2,560 acres, including all of sections 20, 28 and 30, and three-fourths of section 18, and the northeast quarter of section 32, it was authorized to erect and maintain on appellant's property any and all facilities necessary to the full enjoyment of the entire lease.

From an examination of the acts above cited, the right to the unrestricted use of appellant's section 30 is not conferred or authorized. The Agricultural Entry Act, *supra*, sec. 122, provides that "any person who has acquired from the United States the . . . right to . . . remove the reserve deposits . . . may . . . occupy · so much of the surface thereof as may be required for all purposes *reasonably incident* to the mining and removal of the mineral *therefrom.*" This right could not be and is not enlarged by the terms of the lease. It should also be pointed out that oil and gas from other sections not mentioned in the lease are conveyed through the loop system. As pointed out by appellant, if respondent's contention were correct, then it could continue to use the surface of section 30 for handling the production of oil and gas from lands other than appellant's homestead long after the wells on that section had become exhausted and no gas was being produced from them.

We are convinced that if the proffered evidence is properly placed before the jury there will be sufficient evidence to submit to the jury the question of the reasonable value of the wrongful use and occupation of appellant's property by respondent. The trial court therefore erred in directing a verdict for the respondent under the circumstances.

There was considerable argument and the question arose as to the measure of damages allowable under the facts related. On this subject, section 3334 of the Civil Code is applicable. It provides:

"Wrongful occupation of real property. The detriment caused by the wrongful occupation of real property . . . is deemed to be the value of the use of the property for the time of such occupation. . . . "

In *Lindberg* v. *Linder*, 133 Cal. App. 213 [23 Pac. (2d) 842], in regard to the measure of damages for a continuing trespass, the court said, at page 218:

"That a reasonable rental value affords a proper measure of damages in a case of trespass appears in Salmond on Torts, Seventh edition, 1928, page 246: 'When a trespass consists in some beneficial use wrongfully made of the plaintiff's land even if it causes no damage, the plaintiff is entitled to claim by way of damages a reasonable remuneration for the use as if it had been under agreement. . . . The same principle applies to the unlawful use of a way over another's land; even though no harm has been done to the land, a reasonable rent for such a way may be recovered as damages.' (See, also, *Tome Institute* v. *Crothers*, 87 Md. 569 [40 Atl. 261, 267], and 38 Cyc. 1129.)''

38 Cyc. 1129, above cited, reads in part:

"The measure of damages for an appropriation of the use of the land by a continuing trespass is the worth of the use of the property, . . . '' See also *United States* v. *Bernard*, 202 Federal, 728, [C. C. A. 9th C. [121 C. C. A. 190] 1913], in which case it is said:

"The fact that a plaintiff in an action for continued trespass would have made no use of the land which the defendant has wrongfully used to his advantage and profit will not prevent the plaintiff from recovering the actual value of that which has been so used and acquired by the defendant. The measure of damages for an appropriation of land by a continuing trespass is the worth of the use of the property.'' (Citing cases.)

It therefore appears that the evidence offered by appellant bearing on this question was admissible.

■ Respondent next contends that appellant's only remedy for the claimed trespass on the south half of section 30 was by a suit on the bond given to the United States under its lease. In connection with that lease a bond was given under the provisions of the Mineral Leasing Act, *supra*, to the United States "for the use and benefit of the entryman or owner of the land, to secure the payment of such damages to the crops or tangible improvements of the entryman or owner, as may be determined and fixed in an action brought upon the bond . . . against the principal and sureties thereon. . . . '' It is apparent that the bond only covers such damages to crops or tangible improvements of the entryman or owner when rightfully used and occupied for all purposes reasonably incident to the mining or removal of the coal or

other minerals therefrom, and does not cover the reasonable use and occupation of the entryman's land occasioned by a wrongful and continuous trespass. In other words, the bond provided by the statute was to cover damages which might be caused by what we may refer to as the "lawful use of the premises", i. e., the entry and use thereof in connection with the production of oil and gas therefrom. Therefore, in view of the fact that appellant now concedes that "the evidence offered in the trial court was not offered against the original entry of the defendant or for damages sustained to crops or improvements" and that "the evidence that was offered concerned the defendant's *wrongful use* of plaintiff's homestead, which use is a continuing trespass", there appears to be no merit to respondent's contention as to the claimed cause of action on the bond.

The last question presented is this: Respondent contends that, at most, appellant was entitled to receive only nominal damages and that a judgment in favor of this defendant should not be reversed by the appellate court merely to allow the plaintiff to recover nominal damages, citing *Gray* v. *Southern Pacific Co., et al.*, 21 Cal. App. (2d) 240 [68 Pac. (2d) 1011]. It cannot be said as a matter of law under the evidence as proffered that appellant would be entitled only to nominal damages. The main issue involved on this appeal is the measure and amount of damage. Proof of the amount of damage was offered through the questions sought to be asked of appellant's expert witness. Without such testimony, no court or jury could properly determine that amount.

Upon an appeal after a verdict for the defendant brought in under the trial court's instruction, the plaintiff is entitled to have every legitimate inference drawn in his favor, and the judgment must be reversed if it appears that the question, under the evidence and the inferences to be drawn therefrom, is one of fact and not of law. (*Erickson* v. *Vogt,* 27 Cal. App. (2d) 77 [80 Pac. (2d) 533].)

For the reasons expressed, the judgment of the trial court is reversed and a new trial ordered, with instructions to the trial court to permit the appellant to present evidence showing the extent of the claimed unlawful use by respondent of appellant's lands during the three years next preceding the filing of the complaint, and with the further instruction to

the trial court to permit appellant to introduce as the proper measure of damages for such unlawful use, evidence of the reasonable value of the land for such use for the period and for the purposes for which respondent used appellant's land during this period in excess of the rightful use thereof allowed under the Agricultural Entry Act and the Stock-Raising Homestead Act above mentioned. The attempted appeal from the verdict is dismissed.

Barnard, P. J., and Marks, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 5, 1942.