[Civ. No. 3091.   Fourth Dist.   Mar. 4, 1944.]

JEAN BOURDIEU, Respondent, v. SEABOARD OIL COR-
PORATION (a Corporation), et al., Defendants; KET-
TLEMAN NORTH DOME ASSOCIATION (a Corpo-
ration), Appellant.

Martineau & Stratton, L. R. Martineau, Jr., Warren Stratton, Joseph P. Rinnert, Richard C. Heaton and George W. Nilsson for Appellant.

Chandler & Wright, Walter H. Stammer, J. F. Gilbert and Oliver S. Northcote for Respondent.

GRIFFIN, J.—This is an action for damages for claimed injuries to surface rights of land occupied by respondent under certain United States stockraising-homestead acts, against Kettleman North Dome Association, a corporation (hereinafter referred to as KNDA), and others, who acquired certain leasehold mineral rights therein from the United States under a mineral leasing act.

The original pleadings and issues in this action are set

forth and the nature of respondent's cause of action is fully stated and discussed in two former appeals (*Bourdieu* v. *Seaboard Oil Corporation*, 38 Cal.App.2d 11 [100 P.2d 528], and *Bourdieu* v. *Seaboard Oil Corporation*, 48 Cal.App.2d 429 [119 P.2d 973].) We will not therefore encumber this opinion by a reiteration of the facts pleaded. Suffice it to say this court, in the first appeal, held that a cause of action had been stated in each of two counts and reversed a judgment entered following an order sustaining a demurrer without leave to amend.

The first cause of action alleged that defendants wrongfully dispossessed plaintiff from a portion of his surface rights on the north one-half of section 30, and prayed for damages in the sum of $50,000. The second cause of action was based upon an alleged wrongful dispossession of plaintiff's rights on the south one-half of that same section, and sought damages in the sum of $20,000. After reversal of the first judgment and after answers were filed plaintiff proceeded to trial before a jury and offered certain evidence in support of his claimed injuries and damage. A judgment based upon a directed verdict for defendants was subsequently entered. An appeal therefrom was perfected and resulted in a reversal of that judgment. At the last trial a jury awarded plaintiff $3,000 on the first and $5,000 on the second causes of action, against appellant KNDA. It now appeals from the judgment based thereon.

Appellant again contends that no cause of action was stated in the amended complaint and requests this court to "reconsider the whole question and review the matter of" appellant's liability. This question has been twice determined adversely to appellant's contention, not only by this court, but by the Supreme Court of this state on petitions for hearing, which petitions were denied. No inconsistency appears in the two decisions in respect to the questions here presented. Appellant's argument that further consideration should be given to it is not meritorious. When the precise question before the court has been decided in a former appeal in the same action under substantially the same facts, the parties are estopped from again litigating the question in any subsequent proceeding either in the trial or appellate courts. (*Penziner* v. *West American Finance Co.*, 10 Cal.2d 160, 169 [74 P.2d 252]; *Bourdieu* v. *Seaboard Oil Corporation*, 48 Cal. App.2d 429, 433 [119 P.2d 973].)

204

■ The next argument is that appellant is, under the lease, entitled to use and occupy as much of the surface of section 30 as may be reasonably required for the efficient and economical operation of section 30 as a component part of a United States oil and gas lease and of the united operation of the entire field even though it may consume all of respondent's surface rights in section 30. The former decisions on appeal determined that issue adversely to appellant. (*Bourdieu* v. *Seaboard Oil Corporation*, 38 Cal.App.2d 11, at p. 22 [100 P.2d 528], and 48 Cal.App.2d 429, at p. 437 [119 P.2d 973].) Notwithstanding that, it may be reiterated here that we find no provision in the language of any of the acts here involved which in any way grants the mineral lessee any additional right to the free and uninterrupted use of respondent's homestead in connection with operations involving an entire field. The field here concerned covers an area of seventeen miles in length and one and one-half miles in width. It would be unfair to hold that appellant's lease entitled it to further burden respondent's property with such additional facilities of all types as might be used in connection with the unit operation of the entire field without the consent of the homesteader.

If appellant's argument is sound, it would be entitled to occupy all of respondent's homestead after 1930, construct facilities of all types, numbers and sizes, and use the entire surface of the homestead as long as the facilities were a part of the "unit operation of the field" and not pay the homesteader for the additional burden. This use could be carried on indefinitely and long after all of the oil had been produced and taken from the homestead.

■ It is next contended that this court, in the first decision on appeal herein, expressly stated that appellant association was not a trespasser on section 30, and that therefore, in view of this determination, its acts could not be "in the nature of a continuing trespass"; and that an action for damages cannot be maintained unless the plaintiff has the exclusive title or the exclusive right to possession as against the alleged trespasser, citing 63 Corpus Juris, pages 905, 946 and 1019. The appellate court, in the first decision, speaking through Mr. Justice Thomson, pro tem., did state that it felt the entries of defendants onto the portion of section 30 to which defendants were entitled to enter *under their leases* did not constitute a trespass. It was, no doubt, true that the

original entry upon the property which they were entitled to enter under their leases would not be a trespass, but their entry on and taking of additional lands in section 30 for additional independent uses, or the original entering and taking of property in that section for uses not permitted under the lease, and maintaining thereon additional facilities used in connection with the unit operation of the entire field, was an act "in the nature of a continuing trespass, for which plaintiff might recover for resulting damages. This was the effect of the previous statements. As long as appellant confined its use of the surface to producing oil and gas from the homestead, it was not a trespasser, but when it entered and used the surface for the production, treatment and handling of oil and gas from other lands, to that extent it became a trespasser and to that extent respondent's use of his homestead was exclusive. (*Brandt* v. *Wheaton*, 52 Cal. 430; *Grover* v. *Hawley*, 5 Cal. 485; *Kellogg* v. *King*, 114 Cal. 378 [46 P. 166, 55 Am.St.Rep. 74].)

The result of the next few contentions raised by appellant is that the evidence produced by respondent fails to support the allegations of the amended complaint as to any liability of appellant for damages or injury to respondent on either cause of action. In this connection it argues that there is no evidence that appellant used or occupied more land than would be required for the operation of section 30 as a separate parcel. In this connection it may be sufficient to say, without restating the evidence produced, that respondent, as a part of his case, reintroduced, in a great part, the evidence referred to in the former opinion (48 Cal.App.2d 429, 434, 435 and 436), which evidence we previously held was admissible and, assuming its truth, determined that it supported respondent's cause of action as pleaded. A reiteration of that determination becomes unnecessary. The evidence supports the conclusion that respondent was damaged in some amount. The extent of such damage will be later considered in conjunction with the objection to the size of the verdict rendered. The decision on the second appeal (page 439) reversed the judgment and instructed the trial court to permit the plaintiff to present evidence showing the extent of the claimed unlawful use by defendants of plaintiff's lands and to permit him to introduce, as the proper measure of damages for such unlawful use, evidence of the reasonable value of the land for such use for the period and for the purposes for

which defendants used plaintiff's land during that period in excess of the rightful use thereof allowed under the several acts. The question of the wrongful use of the land was not confined necessarily to the amount of land used, but also to the extent of the claimed wrongful use of the homestead.

The next question presented involves the measure of proof of damages allowable under the facts related. The question of the measure of damages was fully discussed in the previous opinion, pages 437-438. In the last trial and at the request of respondent, the trial court instructed the jury:

"You are instructed that in considering the damages sustained by plaintiff for the use the defendant has made of facilities and structures on plaintiff's homestead in connection with its operations off of Section 30, you are not to consider the market value of Section 30 nor the fact that there may have been no substantial physical damage to the land by such wrongful use, but you are to consider the wrongful use which the defendant has made of plaintiff's land during the period from March 31st, 1935, to March 30th, 1938, and the extent thereof, and the value of such use *to said defendant.*" (Italics ours.)

This was followed by an instruction offered by respondent: "that the measure of damages for a continuing trespass is the rental value or the value of the use of the premises for the period and for the purposes for which the trespasser wrongfully uses the property. In determining the rental value or the value of the use you must find the worth of the use of the property *to the trespasser. . . .*" (Italics ours.)

The main vice of the given instructions is the italicized portions thereof, which in effect instructed the jury that in fixing damages it might take into consideration the value of the use *to the defendant,* the claimed trespasser.

In *United States* v. *Bernard,* 202 F. 728 [121 C.C.A. 190], it was said that "the measure of damages for an appropriation of land by a continuing trespass is the worth of the use of the property." This rule is restated in 25 C.J.S. p. 631, sec. 89, as follows:

"The measure of damages for the loss of use for rental value of property occasioned by defendant's wrongful conduct is, as a general rule, the ordinary value thereof, and where property is not rentable, proof of the actual worth of the use thereof may be resorted to."

See, also, *Lindberg* v. *Linder,* 133 Cal.App. 213 [23 P.2d

842], citing *Jacob Tome Institute of Port Deposit* v. *Crothers,* 87 Md. 569 [40 A. 261, 267], wherein the Maryland court reversed a judgment for plaintiff and held that one of the instructions covering the measure of damages was erroneous. The instruction there involved was that if the jury should find for the plaintiffs and should find that defendant had used the land for its own purpose ''then the said plaintiffs are entitled to damages on the basis of what would be a reasonable sum to be paid for the use of his land by the defendant, for the purpose of building and maintaining its institute.'' The appellate court of Maryland pointed out the error in the instruction in the following words:

''On the hypothesis of the thirteenth prayer, the plaintiffs ought to recover compensation for the damage done by the defendant. This is usually measured by a reasonable rent for the land wrongfully occupied, where there is nothing in the case to authorize punitive damages, and there is no such element in this case. The prayer is not clear on this point, and might mislead the jury into believing that they could allow damages commensurate with the benefit derived by the defendant from the use of the land. The law will not permit such a rule. In the absence of circumstances of aggravation, it allows the injured party indemnity for his loss, and nothing more.''

See, also, *Herond* v. *Bonsall,* 60 Cal.App.2d 152, 155 [140 P.2d 121]. In *Edgar* v. *Bank of America,* 50 Cal.App.2d 827 [123 P.2d 885], which involved an action for breach of trust under Civil Code section 2237, this court held that the true criterion of rental value of land or water is not what the land or water would rent for under special or extraordinary circumstances or what its worth to the owner or to a particular occupant or person would be, but its fair rental value on the market when offered for rent under ordinary circumstances. (See, also, *Nathan* v. *Dierssen,* 164 Cal. 607 [130 P. 12].)

Appellant offered an instruction that ''. . . compensation to the plaintiff cannot be based and must not be calculated upon the amount of benefit to or gain by the defendant.'' The trial court's refusal to give the proffered instruction merely emphasized the probability that the jury followed plaintiff's instructions as given and based its verdict upon the amount of ''benefit to the defendant'' or the value or worth of the use of the property *to the defendant.* The weakness of respondent's evidence to show that any great amount

of actual damage was sustained impels this conclusion and the record substantiates it.

It is true that respondent's witnesses testified that the reasonable value of the use of respondent's land for "the purpose of bringing thereon (N. ½ sec. 30) the 1,003,215 barrels of oil that were produced on section 20, storing them there, and after such storage shipping them off," was, for the three-year period "in round figures $10,000," and the sum of $10,000 per year for the south half of section 30.

Respondent Bourdieu testified that the value of damages to his land by appellant from its operations (three in number, i.e., a pipe line and tank site on one acre and a compressor plant site on 2.7 acres) was $70,000. Immediately thereafter appellant offered to show that respondent, on June 9, 1934, granted an easement for a sump on section 30, covering .77 of an acre, to the Standard Oil Company for $25, and offered to show other rights of way granted by Bourdieu across said sections involving similar acreage as here involved on which he placed a value of $10. The trial court refused such offer and struck all testimony in reference thereto. This was error. Had this evidence been admitted it may well be assumed that its effect on the jury would have been pronounced and that it would have enabled the jury to evaluate more correctly the expert opinion testimony which respondent introduced on the question of damages, as well as respondent's testimony concerning the damage or rental value placed on the property by himself. Appellant's witnesses contended throughout the trial that there was no additional burden placed upon respondent's homestead by reason of its operations, and if so, the greatest possible value of such use did not exceed $50.

Notwithstanding respondent's testimony, it must be remembered that he had only a surface right in and to the property herein involved. On that property he grazed his sheep and occupied it for purposes incidental thereto. It is apparent from an inspection of the entire evidence on the subject that the additional burden placed on respondent's surface rights to the homestead was not of such a character as to warrant any large judgment for damages. The judgment herein obtained was for an injury or trespass covering an area of less than four acres of sheep pasture land for a three-year period. The claimed injury consisted mainly of appellant's acts, not of taking much more extra land than

was otherwise needed in the operation of the project, but in using its own facilities in bringing additional gas and oil onto respondent's premises for treatment and later discharging it through other channels and off of the premises.

The verdicts appear to be unreasonable when measured by the correct rule of law respecting damages. We must conclude that the errors complained of were prejudicial.

The judgment is reversed and the cause is remanded for a new trial solely upon the issue of the amount of damages, with directions to the trial court to render judgment in favor of the respondent for the amount of damages so found upon a determination of that issue.

Barnard, P. J., and Marks, J., concurred.