[Civ. No. 18706.  First Dist., Div. One.  Feb. 18, 1960.]

WING H. DON et al., Appellants, v. TROJAN CONSTRUC-
TION COMPANY (a Corporation) et al., Respondents.

Milton L. Ageson for Appellants.

Timothy A. O'Connor, Joseph R. Panetta and William A.
Ingram for Respondents.

DEVINE, J., pro tem.*—Plaintiffs appeal from a judgment
which was rendered in their favor, on the ground of in-
adequacy of the award. The court, sitting without a jury,
rendered judgment in the amount of $200, and expressly
found that this sum constituted nominal damages only.

On February 21, 1957, plaintiffs, husband and wife, bought
a commercially zoned lot in the city of Campbell. They
intended to build a supermarket on the lot, and placed a sign
on it announcing their intention to do so, but conditions on

*Assigned by Chairman of Judicial Council.

the stock market, in which they had holdings, were not favorable to them at the time, so they postponed construction of the market. They did not intend to rent the lot to anyone, and Mr. Don testified that he would not have accepted a proposal to rent, although he might have allowed a brief use of the lot without charge had he been asked for it.

The land had been owned by the Trojan Construction Company, one of the defendants, but was sold on February 21, 1957, to Ad-Mor Enterprises, Inc., a corporation. That grantee immediately, and by the next deed of record conveyed the lot to plaintiffs.

On or about June 1, 1957, Trojan Construction Company was building a subdivision near the Don lot. Streets had to be built, and there was dirt to be taken away and stored somewhere. The general manager of Trojan Construction Company, Mr. Burchfield, testified that he asked a Mr. James of Ad-Mor for permission to store the dirt on the lot, but there is no fixing of the date of the conversation. Mr. Burchfield testified that Mr. James gave Ad-Mor's consent. He testified that he did not know about Mr. Don or his ownership of the property until the suit was brought.

Mr. Burchfield instructed Keeble Construction Company, which was Trojan's subcontractor for putting in the streets, to store the dirt on the lot. During June and July, 1957, dirt was being put on the land and taken off. In August, 1957, Trojan decided it did not need any of the dirt, and advertised that free dirt was available. The public began to remove the dirt. It was stipulated that in March, 1958, there was still "substantial dirt on it," but by the end of March, 1958, there was no dirt on the property.

Because there is a problem of election of remedies raised on the appeal, it is necessary briefly to describe the pleadings.

On November 26, 1957, plaintiffs filed the action, alleging that defendants Trojan and Keeble placed large quantities of dirt on plaintiffs' land, without their permission. They alleged the rental value of the land to be $750 per month, and they prayed damages in the amount of $750 per month until all the dirt should have been removed.

They alleged that the land had been rendered unusable in its state at that time for the building of the intended supermarket, and they prayed damages in the sum of $10,000 for prevention of the use of plaintiffs' property.

They alleged that the acts of defendants were done maliciously and with wanton disregard of plaintiffs' rights and they

asked for punitive damages, but punitive damages later were waived. Plaintiffs tell us in their brief that the waiver was at the pretrial conference, but the pretrial conference order is not before us. At the trial, anyway, punitive damages were waived.

Keeble answered, with general denials, and cross-complained against Trojan, alleging that under its contract with Trojan, Keeble had to follow Trojan's instructions, and that if there is any liability to plaintiffs, the liability is Trojan's.

The evidence as to rental value of the land was: (1) The testimony of plaintiff Don that he estimated the rental value to be $650 per month; (2) Testimony (it was not actually given, but defendants stipulated it would be given if the witnesses took the stand) of two real estate brokers; one, Harry Walters estimated the rental value at $550 per month, and the other, Glenn Hannard at $450 per month.

Don's reasoning was that the average value of the land during the time of the occupation was, in his estimation, $65,000, and that he thought one per cent per month was a fair rental. Walters reasoned that there was no other vacant land in the vicinity and that the highest rental use was for storing heavy equipment. Hannard reasoned that it is difficult to find a tenant for unimproved land, that an investor in unimproved commercial property should get two-thirds of one per cent plus cost. He estimated the value at $60,000 and the rental value at two-thirds of one per cent at $400, and he added $50 per month as taxes.

The court found that the value of the lot was neither greater nor less by reason of the use of the land by defendants; that the average rental value during the period when the land was used by defendants was $550 per month, and the total $5,500. However, the court found that plaintiffs would not have made any use of the land during that time, nor did they intend to rent it out for any purpose, and would not have rented it had an offer been made. The court found that the only damages "are nominal damages sustained by reason of the technical invasion of their possessory rights in the land." The court awarded damages against both defendants in the total amount of $200, and no costs to plaintiffs.

The judgment cannot be sustained. Section 3334 of the Civil Code provides that the detriment caused by the wrongful occupation of real property (except in certain cases of wilful holding over wherein the damages are higher), "is deemed to be the value of the use of the property for the

time of such occupation. . . ." The court found that the rental value was $5,500, but awarded $200 and stated that this amount was merely nominal damages. It is plain that the measure explicitly required by the code was not used.

The argument made by respondents throughout the trial was that the owners had lost nothing because they did not intend to rent the land out anyway. If this subject were open to be debated upon, it could be pointed out that if only nominal damages are awarded, the appropriators of the use of land could gain a virtually expense free use of property for profitable purposes on the single condition that the owner did not presently intend to lease the land or to use it himself. However, the Civil Code in section 3334 has fixed the measure of damages, and has made no exception in cases where the plaintiff did not intend to use the land or to rent it out so that the court can do no other than apply that measure, namely, the "value of the use." That the owners did not intend to make any use of the land themselves does not deprive them of their proper award. (*United States* v. *Bernard,* 202 F. 728 [121 C.C.A. 190]; *Whitwham* v. *Westminster Brymbo Coal & Coke Co.* (1896), 2 Ch. 538; *Bourdieu* v. *Seaboard Oil Corp.,* 48 Cal.App.2d 429, 438 [119 P.2d 973].)

The "permission" which defendants received to use the land, given by Ad-Mor Enterprises, which did not own the land, might have been relevant for the purpose of eliminating or limiting punitive damages, had such damages been asked, but they were waived. ▉ The fact that the occupier thought he had the owner's consent, where there was no showing of ownership of the "consenting" person, nor any agency, actual or ostensible, of that person to act for the owner, does not in any way limit the amount of actual damages to be awarded. "One who intentionally enters land in the possession of another without a privilege to do so is liable . . . although he acts under a mistaken belief of law or fact, however reasonable, not induced by the conduct of the possessor, that he . . . (b) has the consent of the possessor or of a third person who has the power to give consent on the possessor's behalf. . . ." (Rest., Torts, vol. 1, § 164.)

A point relative to the nature of the action is made by respondents. It is necessary, they say, for owners who wish to claim damages according to the measure established in section 3334 of the Civil Code to waive the tort and to sue in assumpsit on an implied contract. They cite the cases of *Samuels* v. *Singer,* 1 Cal.App.2d 545 [36 P.2d 1098, 37 P.2d

1050], and *Herond* v. *Bonsall,* 60 Cal.App.2d 152 [140 P.2d 121]. In both of those cases, the action had been essentially in assumpsit, so we have no more than the statement therein that one may waive the tort and sue for the damages described in section 3334 of the Civil Code, which the landowners did, and successfully, in those two cases.

Just what steps in seeking judicial relief, taken on the part of a plaintiff whose land had been occupied wrongfully, would preclude him from obtaining the measure of damages set forth in section 3334 we need not speculate upon, for respondents have given us no examples, and in any event, no cause of action save that for wrongful occupation was prosecuted by plaintiffs. The claim asserted in the complaint for interference with plaintiffs' intended use of the land, and made while the dirt was still on the lot, was abandoned simply by failing to make any issue of it or to present any evidence to support it. Exemplary damages were expressly waived. Nothing was left but the wrongful occupation charge. Respondents cite the case of *Pacific States Corp.* v. *Arnold,* 23 Cal.App. 672 [139 P. 239], as authority to the effect that the conventional relationship of landlord and tenant must have existed in order to justify the awarding of rental value for wrongful occupation. That case was decided prior to the decision of *Richmond Wharf & Dock Co.* v. *Blake,* 181 Cal. 454 [185 P. 184], which holds that the landlord-tenant relationship is unnecessary to the application of section 3334 of the Civil Code in wrongful occupation cases.

The court having found that $5,500 was the fair rental value of the property for the whole period of the wrongful occupation, judgment should be entered by the court in that amount. It is urged by respondents that the court did not consider sufficiently, if at all, the particular use to which the land was put by respondents. That point seems not to have been raised by respondents at the trial, and, indeed, the testimony produced by plaintiffs, the appellants, relative to rental value, was virtually unchallenged. The power of the trial court to modify on motion for new trial, should the court under all the circumstances deem it just and proper to do so, remains after remand for entry of a particular judgment. (*Estate of Caldwell,* 216 Cal. 694, 698 [16 P.2d 139] ; *Tupman* v. *Haberkern,* 208 Cal. 256, 268 [280 P. 970] ; *Bond* v. *United Railroads,* 169 Cal. 273 [146 P. 688].) As the record stands, plaintiffs have made out their case, under the court's findings, for judgment in the sum of $5,500.

The judgment is reversed with direction to the trial court to enter judgment for plaintiffs and against defendants in the sum of $5,500, and to enter judgment in favor of cross-complainant Keeble against Trojan Construction Company, cross-defendant, in the sum of $5,500.

Tobriner, Acting P. J., and Duniway, J., concurred.