[No. 36577. Department One. September 5, 1963.]

EULINE B. HOWARD, *Individually and as Executrix, Appellant,* v. C. A. EDGREN *et al., Respondents.**

*McKevitt, Snyder & Thomas* and *Hart Snyder,* for appellant.

*Reported in 385 P. (2d) 41.

*Cornelius & Cornelius,* by *Gordon E. Cornelius,* for respondents.

PER This opinion but states the obvious. Persons who take possession of real property (the property in question happened to be a store building) without the consent of the owner are to be deemed tenants by sufferance, and will be required to pay reasonable rent for the actual time they occupy the premises. RCW 59.04.050.[1]

 A mortgagor does not lose his right to the possession of mortgaged real property by failing to make payments on the mortgage, or by moving out of the community; *Norlin v. Montgomery* (1961), 59 Wn. (2d) 268, 367 P. (2d) 621. The right to possession is not lost by abandonment. *Northern Pac. R. Co. v. Tacoma Junk Co.* (1926), 138 Wash. 1, 5, 244 Pac. 117, 119; *Cameron v. Bustard* (1922), 119 Wash. 266, 205 Pac. 385.

Nor does the mortgagee have any right to possession of mortgaged real property without a "foreclosure and sale according to law." RCW 7.28.230.[2] See also *Norlin v. Montgomery, supra.*

The defendants in this case, a mortgagee and his contract purchasers (contract price $2,500), admittedly took possession of the mortgaged property without the consent of the absentee owner; and the contract purchasers, at the time this action was commenced, had conducted their business therein (Sprague Implement Company) for 19 months.

The plaintiff, the owner of the property, was entitled under the statute (RCW 59.04.050[1]) to "reasonable rent" for that 19-month period.

---

[1] "Whenever any person obtains possession of premises without the consent of the owner or other person having the right to give said possession, he shall be deemed a tenant by sufferance merely, and shall be liable to pay reasonable rent for the actual time he occupied the premises, and shall forthwith on demand surrender his said possession to the owner or person who had the right of possession before said entry, and all his right to possession of said premises shall terminate immediately upon said demand." RCW 59.04.050.

[2] "A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property, without a foreclosure and sale according to law."

■ The trial court erred in concluding that a nominal rental of one dollar a month satisfied the requirements of the statute. The trial court was misled by the defendants' arguments into a consideration of whether the plaintiff could have procured a tenant and how much she would have received from the property if the defendants had not occupied it. From the time the defendants took possession of her property, she did have a tenant who conducted a business on her property. Under such circumstances she was entitled to a reasonable rental for the use of her property. The contentions of the defendants here are completely answered by a California court in a recent opinion, *Don v. Trojan Constr. Co.* (1960), 178 Cal. App. (2d) 135, 138, 2 Cal. Rptr. 626:

"The argument made by respondents throughout the trial was that the owners had lost nothing because they did not intend to rent the land out anyway. If this subject were open to be debated upon, it could be pointed out that if only nominal damages are awarded, the appropriators of the use of land could gain a virtually expense free use of property for profitable purposes on the single condition that the owner did not presently intend to lease the land or to use it himself. However, the Civil Code in section 3334 has fixed the measure of damages, and has made no exception in cases where the plaintiff did not intend to use the land or to rent it out so that the court can do no other than apply that measure, namely, the 'value of the use.' That the owners did not intend to make any use of the land themselves does not deprive them of their proper award. (*United States v. Bernard*, 202 F. 728 [121 C.C.A. 190]; *Whitwham v. Westminster Brymbo Coal & Coke Co.* (1896), 2 Ch. 538; *Bourdieu v. Seaboard Oil Corp.*, 48 Cal. App. 2d 429, 438 [119 P. 2d 973].)"

■ There was evidence that after the contract purchasers went into possession of the property in November, 1959, they expended about $5,000 in repairs and improvements; and it is conceded that this added to the rental value of the property. It is argued that liability for rent is fixed by the reasonable rent at the beginning of the tenancy.

The statute does not so provide; the liability is for "reasonable rent for the actual time he occupied the premises." See generally 1 American Law of Property, Sec. 3.36 (1952); 32 A.L.R. (2d) 582. This would include any increase in the value of the use and occupancy attributable to improvements and repairs made to the building, irrespective of who made them, if they became an integral part of the building.

 Nor do we see any equitable basis for disregarding the increased rental valuation attributable to the improvements. It is apparent, from the language of the purchase contract,[3] that the contract purchasers were fully cognizant of the status of the title, and there can be no pretense that they were ignorant of the fact that the mortgagee, from whom they were purchasing, did not have title or the right of possession. The repairs and improvements were incidental to their own use and enjoyment of the property and, obviously, were made in the expectancy that they would eventually become owners of the property. If for reasons of their own the mortgagee and his contract purchasers do not want to take the necessary steps to acquire a right of possession to the property by foreclosure and sale, they are going to have to pay the fair market value for the use and occupancy to the owner during the time they are tenants of that owner. As we pointed out in *Norlin v. Montgomery, supra,* equitable principles cannot be asserted to establish equitable relief in derogation of statutory mandates.

The judgment for nominal damages in the sum of $19 appealed from is reversed and the cause is remanded to the trial court for a determination of the rent due the plaintiff consistent with the applicable statute and the views expressed herein.

FINLEY, J. (concurring in the result)—I agree with the per curiam opinion that a technical legal wrong was done to the owner-mortgagor when, without her consent, the

[3]$1,250 was paid in cash; $1,250 to be paid "upon delivery to the Purchasers of a title insurance policy showing title vested in the Vendors free and clear of all liens and encumbrances . . ."

mortgagee and his contract purchasers moved in and took possession of the premises. Furthermore, in a sense, the status of the latter was that of technical trespassers. However, this status is somewhat ameliorated, it seems to me, because RCW 59.04.050 explicitly prescribes that unauthorized occupiers of realty are "tenants by sufferance." Punishment is not expressly emphasized in the statute, and its implications are not punitive in nature. RCW 59.04.050 imposes an obligation upon "tenants by sufferance," as defined therein, "to pay reasonable rent for the actual time" the premises are occupied. I believe the motivating factor or purpose which the statute seeks to effectuate is the making of a reasonable adjustment of the economic relations of the owner and tenants by sufferance. The statute does not set forth any standards or guides to be utilized in computing or ascertaining "reasonable rent." The per curiam cites no cases, and I have found none, which shed any light respecting an appropriate definition of "reasonable rent." The case of *Don v. Trojan Constr. Co.* (1960), 178 Cal. App. (2d) 135, 2 Cal. Rptr. 626, is not helpful in defining "reasonable rent." Therein, the California court simply answered a peripherial argument that it is no defense for trespassers or tenants by sufferance that the property concerned was not being used by the owner, and that no tenants were available. The property in the California case was vacant land, and hence the problem of "improvements" was nonexistent. The *Don* case is apropos insofar as it held that it was error to grant only nominal damages when it was possible to ascertain the rental value, and the trial court had made, but ignored, a specific finding respecting rental value. In the instant case the trial court seems to have made an award of nominal damages rather than an award of "reasonable rent." This is borne out by the trial court's finding that, after the improvements were made, $60 a month was an appropriate amount respecting rental of the property.

I cannot agree with the per curiam that the owner- mortgagor is entitled to a windfall in terms of the improvements valued, according to the record, at approximately $5,000;

and is also entitled to have "reasonable rent" computed, based upon the full value of the substantial improvements, with no thought or consideration for the interest of the tenant by sufferance in such improvements. The answer as to what constitutes "reasonable rent," I believe, lies somewhere between the two extremes: (1) nominal damages, as computed by the trial court, and (2) a computation considering the total value of the improvements in favor of the owner-mortgagor, with no credit whatsoever and no consideration, equitable or otherwise, respecting the tenants by sufferance.

Taking the thesis that RCW 59.04.050 is not punitive in nature, but simply provides a reasonable basis for adjusting rent and the rights of the parties in situations such as that in the instant case, it would seem proper to me to conceptualize the resolution of the problem involved in terms of what the parties might have done through negotiation and voluntary action respecting the occupancy of the premises and rent to be paid therefor. With this approach in mind, I think the parties might well have discussed what the premises would be worth in terms of rent on an "as-is" basis; but, in view of the alleged uninhabitable condition of the premises, they would have rejected this as being impractical, and thus would have talked in terms of the necessary improvements and the costs thereof to make the premises usable for business purposes. Thus they might well have talked about the owner making certain specified improvements at certain costs to her. Furthermore, that with such improvements the premises would be comparable in terms of floor space, location, appearance, and usability with other buildings in the locality, and that the rent should be comparable, and that some figure as to the rent would have been agreed upon. If the owner was short on finances and the potential tenant in better financial condition, I can hear a proposal emerging that the specified improvements at a specified cost be made by the potential tenant; that the lease be executed for a term of five or ten years, and that the cost of at least the improvements of long term value be appor-

tioned or amortized over the lease period in terms of a monthly reduction in the rent.

In the instant case, as mentioned above, the record shows that the over-all value of the improvements was approximately $5,000. An important step in determining the "reasonable rent" would be a determination as to whether all or only part of the improvements were of long term value and of benefit to the building and its owner, or simply of special or unique value to the tenant in occupancy for his specific purposes. The record shows that two of the improvements involved the roof and the floor of the building at costs, respectively, of somewhere around $1,200 and $2,500. These improvements, generally, would be of long term value in relation to the building and its ownership. For example, a three-ply tar paper and hot tar roof is regarded generally in the trade as a 5-year roof, and should be depreciated or amortized accordingly. Using the figure of $4,000 as the cost of the improvements of long term value, and amortizing the amount over a period of 10 years, would indicate a possible reduction in rent of $400 a year, or $33.33 per month.

I think the case should be remanded to the trial court for a determination, first, as to the rental value of the building with the improvements as of the time these were made, and second, that a reasonable and equitable adjustment in this amount should be made, based upon a reasonable depreciation or amortization of the improvements of long term value. The tenants by sufferance—respondents in this case—would be obligated to pay such an adjusted "reasonable rent" on a monthly basis, covering the period of their occupancy of the premises.

On the basis indicated hereinbefore, I concur in the per curiam opinion that the judgment be reversed, and the case remanded to the trial court for further proceedings.