Joseph **ANSAY** et al., Plaintiffs, Appellants-Appellees,

v.

**BOECKING–BERRY EQUIPMENT CO.**, a corporation, Defendant, Appellant-Appellee.

Nos. 71–1039, 71–1040.

United States Court of Appeals, Tenth Circuit.

Oct. 27, 1971.

Rehearing Denied Nov. 22, 1971.

Terry Shipley, Noble, Okl. (Robert N. Berry, Oklahoma City, Okl., on the brief), for appellant.

Delmer L. Stagner, Oklahoma City, Okl. (LeRoy Powers, Oklahoma City, Okl., on the brief), for appellees.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendant-appellant seeks reversal of a judgment awarding $5,000.00 damages to appellees. The case had to do with the alleged wrongful withholding and occupation by appellant of a tract of land which was subsequently decreed by the Oklahoma courts to have been the property of appellee. Recovery was granted in accordance with an Okla-

homa statute.[1] Appellant maintains that the Ansays, appellees, were not entitled to any award under the evidence presented because of the dearth of evidence, according to appellant, to establish that there was any use value or any rental value. The Ansays have filed a cross-appeal contending that the undisputed evidence established their right to a judgment substantially in excess of the sum which was awarded.

Putting to one side the peripheral questions, the determinative issue is whether the trial court's judgment in favor of the Ansays constitutes a correct measure of damages under a specific Oklahoma statute in this action which is in the nature of trespass to land, wherein appellant wrongfully withheld the possession of the premises, but did so in the hope at least that it would ultimately prevail in the litigation.

Appellant does not dispute the fact that it occupied the tract of land in question and withheld it from the Ansays. This is urban property which is approximately 30,000 square feet in area and which is located on a corner adjacent to at least one arterial street. It had been used for school purposes before 1964.

It came about in this manner:

The school district abandoned the tract and the improvements were removed. Meanwhile, appellant acquired title to adjoining tracts, and following the abandonment by the school district it acquired quit claim deeds from the grantor of the adjoining land. Appellant erected a sign on the property stating that it was the "future home of Boecking-Berry Equipment Company."

In October of 1964, appellant filed a quiet title action in the District Court of Oklahoma County and obtained a favorable decree. Next, in February 1965, the Ansays set aside this judgment and interposed an ejectment action against appellant. They, in turn, prevailed against appellant. The latter appealed to the Oklahoma Supreme Court. The initial opinion of the Oklahoma Supreme Court filed September 10, 1968, reversed the judgment of the trial court. However, in a subsequent opinion filed March 25, 1969, the court affirmed the judgment of the trial court ordering the defendant-appellant here to vacate the premises.

The possession or occupation of the premises by appellant during the period of the litigation was shown by appellant's having the sign on the property together with other acts of dominion. But during the pendency of the case in the Oklahoma Supreme Court, the sign was removed. Then after obtaining the initial reversal from the Supreme Court, appellant enclosed the property with a chain link fence. Following the reversal on rehearing the fence was removed.

Appellant emphasizes that the Ansays did not demand possession of the property and did not demand removal of the fence. The trial court did not regard this as relevant to the question whether a trespass had been committed since the action arose under 23 Okl.St.Ann. § 62, *supra,* and hence an unlawful entry as at common law was not essential. The court did find that the acts of the appellant asserting its rights to the property were carried out in a belief that it owned the property, and determined that as a consequence of this good faith the reasonable market value of the property was reduced by the fact that the Oklahoma State litigation cast a cloud on the Ansays' title.

The expert testimony introduced by the Ansays sought to establish the use value of land during the period of the unlawful possession and detention. The expert derived his opinion from the fair

---

1. 23 Okl.St.Ann. § 62:

The detriment caused by the wrongful occupation of real property, in cases not embraced in Sections 2874, 2880, 2881 and 2882, is deemed to be the value of the use of the property for the time of such occupation, not exceeding six years next preceding the commencement of the action or proceeding to enforce the right to damages, and the costs, if any, of recovering the possession.

market value of the land as a whole. He applied an annual rate of return to this figure and computed the total amount of use value for the period starting February 2, 1965, and continuing to May 13, 1969, as being in the amount of $18,115. The expert called on behalf of appellant was of the opinion that the use value of the land during the period in question was zero.

The trial court found that the appellant had wrongfully occupied the property from February 2, 1965, to May 14, 1969. At the same time, the court found that occupation or possession occurred during the course of the defendant-appellant's asserting its legal rights.[2] It then concluded that the use value of the property during the period in question was diminished due to the fact that the title was clouded as a result of the dispute and the defendant's assertion of defendant's "good faith and honest belief that it had the lawful and legal rights thereto."[3] Judgment in the amount of $5,000 was awarded to the Ansays less $136.94 paid by defendant-appellant for taxes.

## I

The contention of the Ansays (as part of their cross-appeal) that they should have been granted treble damages calls for brief and preliminary consideration. The relevant Oklahoma statute, 23 Okl.St.Ann. § 71, provides for award of treble damages resulting from forcibly excluding a person from possession of real property. The trial court believed that the erecting of the fence topped with barbed wire constituted a forcible exclusion within the meaning of the mentioned statute, but withheld the treble

damage award because of its further finding that the defendant honestly believed that it was legally within its rights and, secondly, was engaged in advancing these rights.

In our judgment the denial of treble damages was correct. It is our view that the erecting of the fence was not an act which justified a treble damage award because 23 Okl.St.Ann. § 71 has been held by the Oklahoma Supreme Court to be penal in nature. Furthermore, the Oklahoma cases considering it have held that active force is indispensable to a treble damage award under the statute. See Crow v. Davidson, 186 Okl. 84, 96 P.2d 70, 72 (1939); Main v. Levine, 189 Okl. 564, 118 P.2d 252 (1941).

The building of the fence was a clear symbol of an assertion of a right and of exclusion, but it was not an active force as contemplated by 23 Okl.St.Ann. § 71.

## II

Appellant further asserts that the trial court erred in awarding any damage because "there was no evidence whatsoever that Ansay suffered or sustained any actual damage." This argument is bottomed on the contention that there was a lack of showing that there was out of pocket cash loss and a dearth of proof that the land would have been put to use by the Ansays had it not been tied up in litigation. This is a specious position since the action is a statutory one under § 62, *supra*, which defines the detriment caused by the wrongful occupation of real property. It is deemed to be the value of the use of the property for the time of the occupation. The several Oklahoma decisions which have construed

2. Specifically, the court found:
   "15. The diminution in the market value and the use value of the subject property during the period pertinent to this case was caused by a genuine dispute as to ownership and cannot be solely attributed to the acts of Defendant."

3. The text of conclusion number 4 is as follows:
   "4. The use value of the property during the time involved herein was

diminished by the fact that the title was clouded and defendant during said period acted in the good faith and honest belief that it had the lawful and legal right thereto. Therefore, although the assertions of Defendant were later determined to be unfounded, it must be regarded as an innocent trespasser and liable only for the actual damages sustained. See Ohio Oil Company v. Sharp, 135 F.2d 303."

this section have not given any such tortured meaning to it. The Oklahoma Supreme Court has treated the term "value of the use" as being substantially the same as rental value.[4]

It is clear from the statute and cases that the trial court correctly concluded that the Ansays were entitled to damages, and it is equally clear that the standard followed, that is, rental value during the period of unlawful detention, was also correct.

## III

The trial judge was not required to accept the testimony of the Ansays' expert that the rental value for the period in question amounted to $18,115. This being a trial to the court, the judge has a broad discretion in determining a fair and just award; his findings will not be set aside where supported by evidence. See Hicks v. Town of Hudson, 390 F.2d 84 (10th Cir. 1967), wherein this court (Judge Hill) recognized that supported findings on damages are binding.[5]

In the record before us there is ample evidence derived from the surrounding facts and circumstances apart from the opinion of the expert capable of furnishing a basis for an award different from the conclusion expressed by the experts.[6] Had the trial court made its determination and award on that basis, the judgment would be affirmed without more.

We must deal, however, with the findings and conclusions reducing the award on the ground that the appellant acted in good faith. The question is whether damages can be reduced solely on the basis of a determination by the trial court that the unlawful possession of land for which damages are claimed was pursuant to a good faith belief on the part of the wrongdoer that his legal position was valid. On this we are constrained to hold that the occupier's good faith does not furnish a ground for reduction.

The present action is not a classic trespass to land case involving as it does a statute defining the damage formula and yet it is in its nature a species of the old trespass writ and, therefore, the rules and principles applicable to trespass apply to the extent at least that the statute fails to furnish an answer. The general rule is that the state of mind of the trespasser is irrelevant and indeed foreign to the action. The only intent requisite is intent to do the act.

According to Prosser[7] the trespasser is liable for an intentional entry "although he has acted in good faith, under the mistaken belief, however reasonable, that he is committing no wrong. Thus, he is a trespasser although he believes that the land is his own, or that he has the consent of the owner, or the legal privilege of entry, or although he is a child too young to understand that what he is doing is wrong." The author goes on to explain that the interest of the landowner is protected at the expense of those who make innocent mistakes. This

4. Wallace v. Blasingame, 53 Okl. 198, 155 P. 1143 (1916); Amberg v. Claussen, 186 Okl. 482, 98 P.2d 927 (Okl.1940); see also Gergens v. McCollum, 27 Okl. 155, 111 P. 208, 210 (Okl.1910); and see Berry v. Opel, 194 Okl. 670, 154 P.2d 575, 576 (Okl.1945).

5. See also Berry v. Opel, *supra*, n. 4. The Oklahoma Supreme Court noted that the judge in awarding damages under the statute which is now before us, 23 Okl.St.Ann. § 62, had fixed the award in an amount less than that which the

testimony had directly supported; the Supreme Court said: "There is competent evidence in the record to sustain the judgment in this respect." (154 P.2d at 576).

6. See for example Texas v. Littlefield, 147 S.W.2d 270 (Tex.Civ.App.1941); State Tax Commission v. United Verde Extension Mining Co., 39 Ariz. 136, 4 P.2d 395 (1931).

7. William L. Prosser, The Law of Torts (3rd Ed. 1964), p. 74.

same view is set forth in the Restatement (Second) of Torts § 164.[8]

Evidence as to the defendant's intent would, of course, be admissible in a case in which exemplary damages are claimed. See Annot., 111 A.L.R. 79, 99–100.[9]

Since state of mind is not a relevant element to trespass of land, it follows almost axiomatically that the good faith of the trespasser is not a factor to be considered for the purpose of mitigating damages.[10]

In Don v. Trojan Construction Co., 178 Cal.App.2d 135, 2 Cal.Rptr. 626 (1957) (has facts which are very similar to the facts here), the California Court of Appeals said:

The "permission" which defendants received to use the land, given by [the third party], which did not own the land, might have been relevant for the purpose of eliminating or limiting punitive damages, had such damages been asked, but they were waived. The fact that the occupier thought he had the owner's consent, where there was no showing of ownership of the "consenting" person, nor any agency, actual or ostensible, of that person to act for the owner, does not in any way limit the amount of actual damages to be awarded. (Citing Restatement (Second) of Torts, 164). 2 Cal.Rptr. at 628.

In Engler v. Hatch, Colo.App., 472 P.2d 680 (1970), it was said:

The defendant's lack of intent to commit a trespass was not a defense to the action for trespass. However, such lack of intent is a defense to the claim for exemplary damages. (Citations omitted. 472 P.2d at 683).

To similar effect are Rosenbaum v. Mathews, 113 Colo. 307, 156 P.2d 843 (1945); La Bruno v. Lawrence, 64 N. J.Super. 570, 166 A.2d 822 (1960), appeal den., 34 N.J. 323, 168 A.2d 694 (1961); and Mecartney v. Smith, 10 Kan.App. 580, 62 P. 540 (1900).

The Oklahoma Supreme Court has also recognized this rule in Ruland v. Zenith Construction Co., 283 P.2d 540 (1955). In that case the Oklahoma court said that evidence of good faith was relevant to refute the charge of malice offered in support of a demand for exemplary damages. The court refused to reverse the judgment, reasoning that the actual damage award was not affected by the evidence of the defendant's good faith.

Under the facts presented there is no good reason for carving an exception to the general rule, for to allow the defendant here to plead that he was in good faith exercising his legal rights would simply allow him to profit from his own wrong to the detriment of the Ansays.

8. It reads:

Intrusions Under Mistake

One who intentionally enters land in the possession of another is subject to liability to the possessor of the land as a trespasser, although he acts under a mistaken belief of law or fact, however reasonable, not induced by the conduct of the possessor, that he

(a) is in possession of the land or entitled to it, or

(b) has the consent of the possessor or of a third person who has the power to give consent on the possessor's behalf, or

(c) has some other privilege to enter or remain on the land.

9. This exception is succinctly stated in 52 Am.Jur. Trespass § 78 (1944), p. 891, which reads as follows:

* * * Thus, when the plaintiff claims exemplary damages, any facts tending to show the motives and intent of the defendants in entering upon the plaintiff's premises are admissible in evidence. On the other hand, it is competent to show the good faith of the defendant when the presence of a bad motive will tend to increase the damages * * *

10. In 87 C.J.S. Trespass § 111, p. 1065 (1954), the rule is stated as follows:

In general compensatory damages for trespass cannot be mitigated. The fact that defendant acted under claim of right, or under a belief that he owned the land, or under a supposed authority or license, or under advice of counsel, cannot mitigate actual damages.

Accordingly, the case must be remanded to the trial court to give it an opportunity to assess damages without reference to the good faith factor considered at the trial. We see no necessity for a retrial since the record is complete.

The judgment is affirmed in part, reversed in part and remanded for reassessment of damages and the entry of a new judgment.