UNITED STATES of America, Plaintiff,

v.

Royal N. HARDAGE, et al., Defendants,

HARDAGE STEERING COMMITTEE, et al., Defendants and Third–Party Plaintiffs/Appellees,

v.

William C. WHITEHEAD, Third–Party Defendant/Appellant,

and

Ilene Whitehead, Additional Third–Party Defendant,

United States of America, acting through the Farmers Home Administration, Additional Third–Party Defendant/Appellee.

No. 94–6192.

United States Court of Appeals, Tenth Circuit.

June 21, 1995.

---

1. We wish to commend Appellant's counsel for a particularly helpful presentation of the issues on appeal.

Robert L. Roark, (Kenneth N. McKinney and John S. Gardner, with him on the briefs), McKinney, Stringer & Webster, P.C., Oklahoma City, OK, for defendants and third-party plaintiffs/appellees.

Charles W. Gaunce, Norman, OK, for third-party defendant/appellant.

Robert A. Bradford, Asst. U.S. Atty., (Vicki Miles–LaGrange, U.S. Atty., and Steven K. Mullins, Asst. U.S. Atty., with him on the briefs), Oklahoma City, OK, for additional third-party defendant/appellee.

Before MOORE, BRIGHT,* and BALDOCK, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This case raises the question of whether the district court may employ the All Writs Act (AWA) to compel the condemnation of land adjacent to a Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) cleanup site because the landowner was allegedly frustrating the district court's institutional controls order by not accepting the final offer for his property. Because we conclude utilization of the AWA in this case was not appropriate, we reverse the district court's judgment and remand this matter for further proceedings.

This saga began in 1986 when the United States filed suit seeking an injunction under Section 106 of CERCLA, 42 U.S.C. § 9606. The government sought to compel the implementation of a remedial cleanup plan at the Hardage Superfund site located near Criner, Oklahoma. The parties ordered to clean up the site are collectively known as the Hardage Steering Committee (HSC or "the committee") and are the third-party plaintiffs in this case.

On August 9, 1990, the district court granted injunctive relief to the United States and ordered the HSC to implement a court approved remedial plan. As part of the plan, the court ordered:

> The Defendants shall be, and hereby are, ORDERED to acquire those proper-

ties near the Hardage site necessary to the Remedy by negotiated purchase of the property tracts or easement interests therein for the Remedy. If the easement and property interests cannot be acquired through negotiated agreement within ninety (90) days from the date of this Judgment and Order, the Defendants shall apply to the Court for such relief as is necessary.

Mr. Whitehead owned property outside of, but adjacent to, the Hardage site falling within this order. In its Supplemental Judgment and Order of May 2, 1991, the district court included this property within an area defined as an institutional control boundary.

Mr. Whitehead and the HSC entered into negotiations in an effort to reach the accord required by the court's original order directing acquisition of property or easements to effect a remedy. Only 40 acres of Mr. Whitehead's 280–acre dairy farm were within the area necessary for the remedial plan. HSC sought to purchase these 40 acres, while Mr. Whitehead wanted to sell his entire dairy farm as a going concern. The parties could not agree on a price for the Whitehead property and negotiations broke down, leaving the Whitehead property as the only tract within the institutional control boundary not acquired by HSC.

As a consequence of this failure, HSC petitioned the court to add Mr. Whitehead and all those claiming an interest in his property as third-party defendants. The district court granted this request, and HSC filed a third-party complaint against Mr. Whitehead. The third-party complaint sought the imposition on Mr. Whitehead's property of the restrictive covenants described in the court's Supplemental Judgment and Order, subject to just compensation for the admitted taking. The complaint cited ancillary jurisdiction arising from CERCLA and the All Writs Act, 28 U.S.C. § 1651(a), as the basis for subject matter jurisdiction. In the second claim for relief, HSC asserted under Oklahoma law, Okla.Stat.Ann. tit. 27, § 6 (West 1995), it had

---

* Honorable Myron H. Bright, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

a private right of eminent domain to seek condemnation of the Whitehead property for a "sanitary purpose." HSC prayed for an order directing the Whiteheads to show cause why restrictive covenants should not be entered against their property; condemnation of that property "for use by the HSC parties ... for implementation of the remedy;" determination of "just compensation for the taking;" and an award of title in fee simple to a trustee for HSC.

The Whiteheads moved to dismiss the complaint on Fed.R.Civ.P. 12(b)(6) grounds. Before deciding that motion, the district court granted the order to show cause prayed for by HSC, and a hearing was held during which the district court explored with counsel its jurisdiction and the procedures it should employ.

No testimony was taken during this informal hearing, but counsel for both sides amply explored their positions. Counsel for the Whiteheads stated initially HSC was not entitled to relief under CERCLA because the Whiteheads were not a party to the original case and had nothing to do with the cleanup site. He claimed, moreover, HSC had not been negotiating in good faith. This claim was denied by HSC's counsel who stated the committee had made several offers for the 40 acres but had not agreed to purchase the entire farm as demanded by the Whiteheads. He paraphrased the Whiteheads bargaining posture as: "You have got to buy our entire farm and not just the land and the improvements; we want you to buy it as a going concern." He added, "Their demands have been, in a word, outrageous in terms of appraised value. They have been more than six times the appraised value of the property." Later counsel admitted, "Let me make clear that we are not adverse by any means to talking to the Whiteheads about purchasing their [entire] farm." He noted, however, the amount the Whiteheads wanted was "so far away from reality that we have reached an impasse."

HSC's counsel advised the court the parties had been negotiating for two years, and the last offer the Whiteheads had made was about five months prior to the hearing. He contended, "we have come back to the Court because we don't know what else to do." Counsel outlined the progress made with acquiring all the other property involved in the institutional controls order and advised HSC needed imposition of the restrictive covenants on the Whitehead property to allow fencing of the site boundary line as the first step in implementing the Superfund remedial cleanup plan.

The court then turned to counsel for the Whiteheads and asked:

If I don't permit them to restrict [the Whitehead property] as it should be ... can the policy and ... provisions of CIRCLA [sic] and so forth be carried out? Wouldn't that completely frustrate it unless they pay whatever your clients ask them for it? Are you saying that the Court is powerless to restrict the land? If not, how would I go about restricting it other than this way?

Interestingly, counsel responded, "[W]ell, certainly you could always order the EPA to engage in condemnation proceedings." When asked by the court, "[i]sn't that what they are doing here?", counsel responded that "[t]hese people are not the EPA."

The Whiteheads' counsel asserted the taking of a portion of his clients' property would destroy the value of the entire property. The court noted, however, condemnation would allow for consideration of that concern, and the factfinder would be able to take into consideration the effect condemnation had on the value of the remaining property or business. That issue led the court to inquire whether a jury could be employed.

Counsel for the government replied that condemnation "is a Commission matter under federal law." That remark led the court and counsel into a general discussion of the jurisdictional basis upon which they were proceeding, and HSC's counsel stated,

I believe you will find that Rule 71(a) [sic], Federal Rules of Civil Procedure, deals with condemnation, and sets forth the procedure for condemnation, and has a provision that says *to the extent that state law allows a jury trial, then state law shall be followed.*

(emphasis added).[1] After the court, recalling its own experience, noted it had not conducted "a single jury trial condemnation," counsel for the government added, "No, it [a jury trial] is not a right under federal law."[2]

At this juncture, counsel for the government clarified HSC was not "standing in the shoes of EPA." He noted the court's prior order:

> specifically says that the rights of the EPA to condemn land are not given to the private citizens in this case. So if there is a jurisdictional right in this case to condemn the Whiteheads' farm, it flows from your inherent powers under Superfund law or under your inherent powers as a federal judge. It doesn't flow through the EPA and the United States' condemnation powers.

After additional discussion, counsel for HSC suggested "we proceed under your inherent powers to do the condemnation."

Obviously troubled by the extent of condemnation damages, the court pressed counsel on the issue of whether damages should include not only "the value of the land taken but the impact of that taken on the remaining tract or perhaps the ongoing business." Counsel for HSC responded, "under the state condemnation procedure ... the Commissioners [could] take into account what the impact of removing the forty acres is on the property that they are left with." When further pressed whether that value would include "impact on ongoing businesses," HSC's counsel seemed to agree it would.

For the balance of the hearing, no further mention of a right to a jury trial on the issue of value was discussed, and counsel for the Whiteheads was not specifically given an opportunity to demand such a trial. It does appear from the record, however, before even deciding whether it had subject matter jurisdiction, the court had concluded the Whiteheads did not have a right to a jury determination of the value of their property.

After the conclusion of this hearing, the court entered a formal order denying the Whiteheads' motion to dismiss.[3] Citing *United States v. New York Tel. Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977), the court stated it was "empowered under the All Writs Act to issue those orders analogous to common-law writs that compel the assistance of the Whiteheads that is required to implement the court-approved remedy. Accordingly, the Court finds dismissal of this claim for relief is not warranted." Because of this finding, the district court held it was not necessary to rule on the alternative bases of jurisdiction asserted by HSC. The court further found "Rule 71A, F.R.Civ.P., should govern in this case." Thus, the court directed the parties to commence upon a specific procedure for the appointment of three commissioners and the formulation of the instructions to be submitted to them. No consideration was given to whether a jury trial should be employed. The court also imposed the restrictive covenants, and ordered the 40 acres be fenced as requested by HSC.

In accordance with the procedures outlined in its order, the court appointed three property appraisers as commissioners to determine the value of the Whitehead property. After considering instructions tendered by the parties,[4] the court settled upon instructions that were silent upon the effect the taking of the 40-acre tract would have on the going concern of the Whitehead dairy enterprise. The commissioners were instructed to determine the fair market value of the entire

---

1. This is an unfortunate misstatement of Fed. R.Civ.P. 71A(h), as we shall later discuss.

2. This statement was also misleading.

3. The Whiteheads attempted to appeal this denial, but in a sua sponte unpublished Order and Judgment we held we lacked jurisdiction because the district court's order was not a final judgment. *United States v. Hardage*, 996 F.2d 312, No. 93–6099, 1993 WL 207380, (10th Cir.1993) (per curiam).

4. Only those offered by the Whiteheads are in the record. They are predicated upon this court's assumption made in the previous Order and Judgment dismissing the appeal that the injunction was to be temporary. Hence, the Whiteheads proposed the commissioners determine value based upon "yearly fair market rental value" of their entire going concern. Their tendered instructions were denied by the court.

tract of land and the fair market value of the tract not taken. They were then instructed to "deduct what you find to be the value of the remainder of the land ... from the amount you find to be the value of the whole tract.... The difference between these amounts will be the amount of just compensation Whitehead should be awarded." Thus, despite the court's previously expressed concern for the value of the dairy enterprise following the taking of the 40 acres and the factfinders' ability to consider that value in setting condemnation damages, the court finally instructed the commissioners to only determine the value of the land itself. No instruction was given that would have allowed the commissioners to take into consideration the potential economic effect the loss of the 40 acres would have on the going concern value of the Whitehead dairy business or whether any such loss would be condemnation damages. No explanation for that change in approach appears in the record.

The commissioners visited the property and conducted an extensive formal hearing, ultimately concluding just compensation for the taking, including severance damages, was $60,000.00. The district court adopted the commissioners' findings, and this appeal ensued.

■ The first issue we must consider is whether the district court properly concluded it had jurisdiction under the All Writs Act to allow HSC to condemn the Whitehead property. We review the question de novo as it is a question of law. *Goichman v. City of Aspen*, 859 F.2d 1466, 1467 (10th Cir.1988).

At the outset, we are cognizant of the dilemma faced by the district court. Only one parcel of property remained to satisfy the institutional controls boundary order, and the parties appeared unable to settle upon a price that would allow a negotiated transfer of that property. Moreover, HSC's appeal to the court for assistance was in keeping with the court's original order establishing the scheme for negotiated acquisition of the necessary property. More importantly, the district court properly perceived the institutional controls order was not going to be satisfied without assistance from the court. Thus, we

agree with the district court that it had to fashion a remedy.

■ Yet, like vultures circling carrion, an ominous presence exists which presents an impediment to an easy solution. Federal courts have limited jurisdiction, *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701, 102 S.Ct. 2099, 2103–04, 72 L.Ed.2d 492 (1982), and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, *id.* at 701–02, 102 S.Ct. at 2103–04, and the Constitution, Article III, Section 2, Clause 1. *See also Kokkonen v. Guardian Life Ins. Co. of Am.*, —— U.S. ——, ——, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Willy v. Coastal Corp.*, 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992). Thus, with the exception of certain powers which truly fit the rubric of "inherent power," such as the powers to determine their own jurisdiction and to manage their own dockets, *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962), federal courts cannot act in the absence of statutory authority.

■ Recognizing this limitation, but trying to cut the gordian knot created by the parties' inability to bring their negotiations to closure, at HSC's urging, the district court seized upon the All Writs Act for a solution. While we understand the factors that led to this decision, we disagree with the court's choice of a remedy.

Unfortunately, there is an extreme dearth of case law interpreting the substantive parameters of the All Writs Act. The broadest application of the Act appears to be in *New York Tel.* where the Court upheld the district court's authority to order New York Telephone Co. to assist the FBI in installing pen registers on two telephone lines to facilitate the Bureau's surveillance of an illegal gambling operation. As part of the order, the telephone company was required to provide access for up to twenty days to several of its phone lines and to offer technical assistance. The FBI was required to compensate the company for its efforts. The Supreme Court held the district court had the authority under the AWA to issue its order after having

jurisdiction under Fed.R.Crim.P. 41(b). 434 U.S. at 168–78, 98 S.Ct. at 370–75. The principal distinction between this case and *New York Tel.*, however, is that the action in the latter did not involve a permanent divestiture of an interest in property. Indeed, the FBI's actions were only a partial, temporary taking by physical occupation of the Company's phone lines. *See generally First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). However, the Court did not imply the authority to require such a temporary occupation of the premises of another could be transformed into a full-blown eminent domain proceeding.

The other cases cited by the parties and the Court in *New York Tel.* do not extend the application of the AWA as far. *See, e.g., Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283 (9th Cir.1979) (court upheld district court's refusal to enjoin employer's policy prohibiting its employees from wearing OSHA air quality and noise level testing devices under the AWA when no statutory or regulatory authority existed requiring the devices); *Board of Educ. v. York*, 429 F.2d 66 (10th Cir.1970) (court upheld district court's injunction and contempt citation under the AWA requiring parents to send their son to a new school based on the redrawn district boundaries drafted pursuant to a desegregation order), *cert. denied*, 401 U.S. 954, 91 S.Ct. 968, 28 L.Ed.2d 237 (1971); *Commercial Sec. Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352 (10th Cir.1972) (court reversed district court's conclusion AWA supplied independent jurisdiction to enjoin the United States from conducting a foreclosure sale); *United States v. Field*, 193 F.2d 92 (2d Cir.) (court upheld district court's order under the AWA requiring several trustees of the Bail Fund of the Civil Rights Congress of New York to turn over some of their records and citing them for contempt when they refused. The Fund provided bail for several officers of the Communist Party prosecuted under the Smith Act who subsequently jumped bail), *cert. denied*, 342 U.S. 894, 72 S.Ct. 202, 96 L.Ed. 670 (1951).

Finally, nothing within the AWA itself suggests it vests the district court with jurisdiction to condemn private property. Thus, we believe the court erred in equating the power to work a divestiture of an interest in property with a writ to command the performance of a temporary service. Moreover, as the Court noted in *New York Tel.*, 434 U.S. at 174, 98 S.Ct. at 373:

> The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, *Mississippi Valley Barge Line Co. v. United States*, 273 F.Supp. 1, 6 (E.D.Mo.1967), summarily aff'd, 389 U.S. 579, 88 S.Ct. 692, 19 L.Ed.2d 779 (1968); *Board of Education v. York*, 429 F.2d 66 (CA 10 1970), *cert. denied*, 401 U.S. 954, 91 S.Ct. 968, 28 L.Ed.2d 237 (1971), and encompasses even those who have not taken any affirmative action to hinder justice. *United States v. McHie*, 196 F. 586 (N.D.Ill.1912); *United States v. Field*, 193 F.2d 92, 95–96 (CA 2), *cert. denied*, 342 U.S. 894, 72 S.Ct. 202, 96 L.Ed. 670 (1951).

Assuming the Act applied here, the district court was required to make a finding the Whiteheads were "frustrating" the implementation of the institutional control boundary order. No such finding was made. Indeed, under the facts presented to the court, the "frustration" of its prior order was simply the product of the inability of either side to agree upon a fair price for the Whiteheads' property. Absent additional evidence, we are not prepared to state a party who simply holds out for what he considers a fair price has committed the functional equivalent of frustrating the court. Such a holding could result in untold mischief. Until the party seeking relief from the court can prove the opposing party is intentionally refusing to bargain in good faith or intentionally balking to prevent the accomplishment of an underlying court order, both parties must bear some responsibility for their negotiating

failure. We are simply unwilling to accept the notion that unfruitful arms-length bargaining equates with "frustration" as the word is applied to the All Writs Act.

Thus, while the district court's resort to the AWA is understandable, we think its use was improper. Particularly because it led to a procedure which did not permit the due process rights to which the Whiteheads were entitled.

■ Embarking from the mooring of the All Writs Act, the court set a course ostensibly fixed by the principles of Fed. R.Civ.P. 71A. Yet, that procedure was not properly invoked by the committee. The third-party complaint it filed did not comply with the rule because it did not name the property as required by Rule 71A(c)(1); it did not set forth the authority for the taking or the use for which the property is to be taken, nor did it otherwise contain the provisions required by Rule 71A(c)(2). Finally, and most importantly, the court cut off the right of the Whiteheads to demand a jury trial as provided in Rule 71A(h).

■ Unfortunately, both counsel for the government and HSC led the district court astray in this respect. Their statements to the contrary notwithstanding, the right to a jury trial is provided in condemnation proceedings under Rule 71A. Nothing contained in the rule states, as suggested by HSC's counsel, the procedure provided in state law shall govern with respect to the right to a jury. Nor does the rule state federal condemnation is always a "commission proceeding" as noted by counsel for the government. Indeed, the rule explicitly provides for a jury upon demand unless federal law governing the case creates another "tribunal" for that purpose. *Atlantic Seaboard Corp. v. Van Sterkenburg*, 318 F.2d 455, 459 (4th Cir.1963). Any party to a condemnation proceeding is ordinarily entitled to a jury trial to fix the value of the property taken where demand is made as provided in Rule 71A(h). *United States v. Waymire*, 202 F.2d 550, 552 (10th Cir.1953); *United States v. Buhler*, 254 F.2d 876, 878 (5th Cir.1958). Such a jury trial is a matter of right, *United States v. Theimer*, 199 F.2d 501, 503–04 (10th Cir.1952).[5]

During oral argument before this court, counsel for HSC contended an opportunity was presented to the Whiteheads to demand a jury and they simply did not do so. The record, however, clearly indicates the district court effectively cut off the right to make that demand even before the court concluded it had the subject matter jurisdiction challenged in the Whiteheads' motion to dismiss. We believe under these circumstances HSC's argument is disingenuous.

■ While HSC argues Oklahoma law provides jurisdiction for this action, it cites no apposite supporting authority, and we have found none. Nothing within CERCLA gives indication that jurisdiction of the district court can be predicated upon a Janus-like segmentation of authority. The committee's attempt to utilize that portion of Oklahoma law that permits private condemnation of property for "sanitation" purposes is not logical. HSC's only basis to seek the transfer of the Whitehead property does not arise from an interest in land or any other property right. If it has a claim for condemnation, it exists only in the district court's remedial order and does not arise from any law of the State of Oklahoma. Clearly, this entire proceeding has its fundament in the encompassing provisions of CERCLA, and it is governed strictly by the principles of federal law. We therefore hold, if the district court must divest the Whiteheads' interest in their property, in part or in whole, the court must do so with all the panoply of due process rights vested in the Whiteheads by the Fifth Amendment.

■ We agree with the district court that the Whiteheads cannot stymie the obvious

---

5. Fed.R.Civ.P. 71A(h) provides another exception to the jury trial right in cases where "the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it." The district court made no findings to trigger this exception here.

benefits to the public health and the environment that will result from the cleanup of the Hardage site.[6] Yet, the court can condemn the Whiteheads' interest only when the right of eminent domain is invoked by a party with the power to do so.[7] Then, proceeding under the aegis of Rule 71A, with all that rule entails, including the right to a jury trial if requested, the court may properly exercise its jurisdiction.

Because of this conclusion, we will not treat the other issues raised by the parties at this time. We note for their guidance, however, we have some concern with a valuation scheme that takes into consideration only the market value of the land as the full measure of the condemnation damages. We see some validity to the Whiteheads' claim the taking of 40 acres may have an effect on their ability to conduct a viable dairy business or that it will at least cause some injury to the dairy as a going concern. While we express no opinion on the proper measure of damages or even the validity of the claim, the record before us does not explain how the district court, once concerned with these same issues, concluded to base valuation on the market value of the land alone.

**REVERSED AND REMANDED** for further proceedings.

---

**6.** Mr. Whitehead's argument that CERCLA somehow restricts either the federal or a state government from exercising eminent domain authority to obtain a third-party's property to facilitate a Superfund cleanup is specious.

**7.** The EPA has broad authority to implement CERCLA remedial plans. *See* 42 U.S.C. § 9604. Specifically, § 9604(J)(1) grants the president, or the president's delegate, the authority to acquire private property for such remedial purposes. "The President is authorized to acquire, by purchase, lease, **condemnation**, donation, or otherwise, any real property or any interest in property that the President in his discretion determines is needed to conduct a remedial action under this chapter." (emphasis added).