F I L E D
United States Court of Appeals
Tenth Circuit

DEC 16 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WILLIAM C. WHITEHEAD,

      Plaintiff - Appellant,

v.

ALLIED SIGNAL, INC.; AMERICAN
AIRLINES, INC., AMERICAN
TELEPHONE AND TELEGRAPH;
ASHLAND OIL, INC.; ATLANTIC
RICHFIELD COMPANY; BAXTER
HEALTHCARE CORPORATION,
doing business as: PHARMASEAL
LABORATORIES; BORG WARNER
CORPORATION;
BRIDGESTONE/FIRESTONE INC,
formerly known as: FIRESTONE
TIRE & RUBBER COMPANY;
BROWN & ROOT, INC.; BULL HN
INFORMATION SYSTEMS, INC.,
formerly known as: HONEYWELL
BULL, INC.; COLTEC INDUSTRIES,
INC., formerly known as: COLT
INDUSTRIES, Inc., doing business as:
HOLLY SPECIALTY PRODUCTS;
DELUXE CORPORATION, doing
business as: DELUXE CHECK
PRINTERS, INC.; EXXON
CORPORATION; GENCORP INC.,
including DiversiTech General;
HALLIBURTON COMPANY;
MAREMONT CORPORATION;
MCDONNELL DOUGLAS
CORPORATION; MOBIL
CHEMICAL COMPANY, INC.;
NALCO CHEMICAL COMPANY;

No. 98-6305
(D.C. No. CV-97-1877-C)
(Western District of Oklahoma)

PPG INDUSTRIES, INC.;
ROCKWELL INTERNATIONAL
CORPORATION, formerly known as:
NORTH AMERICAN ROCKWELL;
SAFETY KLEEN CORPORATION;
SEAGATE  TECHNOLOGY, INC.,
formerly known as: MAGNETIC
PERIPHERALS, Inc.; SHAKLEE
CORPORATION; TEXACO
REFINING AND MARKETING,
INC.; TEXAS INSTRUMENTS
INCORPORATED; THOMAS &
BETTS CORPORATION; UOP, INC.;
UNIROYAL, INC.; UNISYS
CORPORATION, formerly known as:
SPERRY CORPORATION, doing
business as: SPERRY-VICKERS;
WESTINGHOUSE ELECTRIC
CORPORATION;  WEYERHAUSER
COMPANY; WOL CORPORATION,
also known as: Wolverine Pipe,

     Defendants - Appellees.

---

**ORDER  AND  JUDGMENT** [*]

---

Before **BRORBY** , **EBEL** and **LUCERO** , Circuit Judges.

---

[*]The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1.9.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This diversity jurisdiction case involves claims under Oklahoma law of forcible ejectment and abuse of process. Plaintiff William C. Whitehead appeals the district court's grant of summary judgment for defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

The underlying circumstances of this case are familiar, having been before this court on more than one prior occasion, and we need not repeat them in detail. See United States v. Hardage, 58 F.3d 569, 571-74 (10th Cir. 1995). In 1986, the United States brought suit under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), seeking the cleanup of a Superfund site near Criner, Oklahoma. See id. at 571. The district court approved a remedial plan, including an order that defendants acquire neighboring tracts of land within an "institutional control boundary." See id. The court specified that the defendants (collectively known as the Hardage Steering Committee or HSC) acquire these tracts or easement interests therein "by negotiated purchase" and that "[i]f the easement and property interests cannot be acquired through negotiated agreement within ninety (90) days from the date of this Judgment and Order, the Defendants shall apply to the Court for such relief as is necessary." Id.

The defendants were able to acquire all of the tracts within the institutional control boundary by negotiation, except for one 40-acre portion of a dairy farm belonging to appellant. See id. Defendants then successfully moved to add

appellant as a third-party defendant and sought condemnation of an interest in appellant's land. See id. at 571-72. The district court ordered condemnation of the 40 acres, imposition of covenants restricting access thereto, and the fencing of the property as requested by HSC. See id. at 573. We subsequently vacated the district court's order, holding that it lacked power under the All Writs Act to condemn appellant's land. See id. at 575-77. Following our remand of the case to the district court, the HSC defendants moved successfully to amend the institutional control boundary to exclude the 40-acre tract. Appellant then brought suit—originally in state court, then in federal district court, having successfully moved to dismiss the state court action without prejudice—bringing claims of forcible ejectment, see 23 O.S. § 71, and abuse of process.

Defendants successfully moved for summary judgment on the merits of both appellant's claims. "We review a grant of summary judgment de novo, applying the customary legal standard under Fed. R. Civ. P. 56(c)." Vice v. Conoco, Inc., 150 F.3d 1286, 1288 (10th Cir. 1998) (citations omitted).

**I**

The district court found that appellant could not maintain a complaint for forcible ejectment, because appellees' actions "were taken . . . under Court order." Whitehead v. Allied Signal, No. CIV-97-1877-C (W.D. Okla. July 22, 1998) (Mem. Op.) at 5. The district court's opinion emphasized two factors.

First, the defendants had not themselves exercised force, because "the power of the Court rather than the power of defendants [was] the 'force' involved." Id. at 5-6. Second, the district court held that appellees "cannot be held liable for acquiescing to the court's authority as required by law." Id. at 6.

On appeal, Whitehead contends that defendants cannot assert compliance with the court's order as justification for their temporary exclusion of him from his property because the order had been sought by defendants in the first place. This argument is unavailing. Defendants' motives are immaterial. Insofar as appellant alleges that defendants sought the condemnation of his property as retaliation for his wife's testimony United States v. Hardage, such an improper motive is relevant only to his claim of abuse of process, discussed infra at Section III.

Moreover, Whitehead's apparent contention that there is an issue of fact as to whether defendants were acting pursuant to a court order is wholly unsupported in the record and thus cannot serve as a disputed issue of material fact sufficient to defeat summary judgment. See Appellant's App. at 142 (D. Ct. Order, Mar. 8, 1993, imposing restrictive covenants upon and allowing HSC access to property in question "to survey the property and erect a fence for security purposes").

We agree with the district court that the threat of sanction for violating a court order does not constitute exercise of force by defendants themselves such as

would make out a violation of 23 O.S. § 71.  See Crow v. Davidson , 96 P.2d 70, 72 (Okla. 1939) (holding that statute permitting triple damages for forcible ejectment is to be construed narrowly).  Nor does the building of the fence constitute the active force sufficient to satisfy the requirements of 23 O.S. § 71. See Ansay v. Boecking-Berry Equip. Co.   , 450 F.2d 433, 436 (10th Cir. 1971).

Even construing appellant's complaint liberally to incorporate a simple claim for trespass as well as the triple damages claim, his allegations do not, as a matter of law, allow him to maintain a trespass action against appellees.  It is a general rule of tort law that court orders validate actions that would otherwise constitute intentional property torts such as conversion and trespass.    See, e.g. , Mid-America Fire & Marine Ins. Co. v. Middleton   , 468 N.E.2d 1335, 1338 (Ill. App. Ct. 1984);   American States Ins. Co. v. Citizens Fidelity Bank & Trust Co.     , 662 S.W.2d 851, 853 (Ky. Ct. App. 1984);    Perry Center, Inc. v. Heitkamp   , 576 N.W.2d 505, 511 (N.D. 1998);    see also  Restatement (Second) of Torts § 266 (1965) ("One is privileged to commit acts which would otherwise be a trespass to a chattel or a conversion when he acts pursuant to a court order which is valid or fair on its face.").

The district court correctly noted the public policy interest in compliance with judicial orders.   See  W.R. Grace Co. v. Local Union 759   , 461 U.S. 757, 766 (1983) ("It is beyond question that obedience to judicial orders is an important

public policy. An injunction issued by a court acting within its jurisdiction must be obeyed until the injunction is vacated or withdrawn.") Parties should not be forced to second-guess compliance with such orders because of the threat of trespass or other tort liability should such orders later be vacated or otherwise withdrawn. Whitehead argues that the eventual amendment of the institutional control boundary supports an inference that inclusion of his property was never necessary to the remedial scheme. We will not, however, look beyond the fact that the district court's order was facially valid and made within its jurisdiction, until such time as it was vacated by this court.

## II

Appellant also raises a claim that he is entitled to damages, apparently under the Takings Clause, for the temporary taking of his property for a public purpose. We do not reach that claim because it is raised for the first time on appeal. We "will consider matters not raised or argued in the trial court only in 'the most unusual circumstances,' which 'may include issues regarding jurisdiction and sovereign immunity, . . . instances where public interest is implicated, . . . or where manifest injustice would result.'" Smith v. Rogers Galvanizing Co., 128 F.3d 1380, 1386 (10th Cir. 1997) (quoting Rademacher v. Colorado Ass'n of Soil Conservation Districts Medical Benefit Plan, 11 F.3d

1567, 1571-72 (10th Cir. 1993)).  This claim does not implicate such circumstances and hence we do not address it here.

### III

The district court found that appellant alleges no abuse of process, again because appellees' actions were taken pursuant to a valid court order.  "The elements of abuse of process are (1) the improper use of the court's process (2) _primarily_ for an ulterior or improper purpose (3) with the resulting damage to the plaintiff asserting the misuse.  Although a party may be motivated by bad intentions, there is no abuse if the court's process is used legitimately for its _authorized_ intentions."  Bank of Oklahoma, N.A. v. Portis, 942 P.2d 249, 255 (Okla. Ct. App. 1997) (citing Greenberg v. Wolfberg, 890 P.2d 895, 905 (Okla. 1994)) (emphasis in original).

Even were we to agree that appellant's claim could survive summary judgment on the issues of improper purpose and damages, his allegations cannot demonstrate improper use of the court's process.  Regardless of any alleged improper intentions, the record in Hardage clearly demonstrates that the restraints imposed on appellant's property were determined by the court to be for the purpose of implementing the CERCLA remedial plan, and were valid until vacated.  Appellant appears to contend that our vacation of the district court's order and the later amendment of the remedial plan demonstrate that appellee's

request for the initial order was an improper use of the court's process. We disagree. An appeals court's later reversal of a lower court's decision does not make a party's actions in seeking that decision an abuse of process. Clearly, the order at issue in this case was a legitimate use of the court's process for its authorized intentions, see Greenberg, 890 P.2d at 905, as appellees had been specifically instructed, in the district court's order of August 9, 1990, to "apply to the Court for such relief as is necessary" following failure to acquire the property by negotiation. See Hardage, 58 F.3d at 571. Therefore, we agree with the district court that the facts in this case cannot support a finding of improper use of process.

**AFFIRMED** . The mandate shall issue forthwith.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge